UNITED STATES of America

v.

Linda AGURS, Appellant.

UNITED STATES of America

v.

Linda V. AGURS, Appellant
(two cases).

Nos. 72–2072, 73–1956 and 74–1542.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 25, 1974.

Decided April 3, 1975.

Cornish F. Hitchcock,* with whom Sherman L. Cohn, Wshington, D. C. (appointed by this Court), and Steven M. Pavsner,* were on the brief, for appellant. Edwin J. Bradley, Washington, D. C. (appointed by this Court), also entered an appearance for appellant.

Gerard F. Treanor, Jr., Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and James F. McMullin, Asst. U. S. Attys., were on the brief for appellee. Harold H. Titus, Jr., U. S. Atty. at the time the record was filed and John O'B Clarke, Jr., Asst. U. S. Atty., also entered appearances for appellee in No. 72–2072.

* Entered appearances as student counsel pursuant to Rule 20 of the General Rules of this Court.

Before BAZELON, Chief Judge, DAN-AHER, Senior Circuit Judge, and JUS-TICE,** , United States District Judge for the Eastern District of Texas.

Opinion for the Court filed by District Judge JUSTICE.

JUSTICE, District Judge:

The appellant, Linda Agurs, appeals from her conviction for second-degree murder,[1] for which she was sentenced to a term of five to twenty years' imprisonment. Apart from the issue of self-defense, there was little disagreement between the parties at trial with respect to the facts.

James T. Sewell met his estranged wife for lunch on September 24, 1971. They had planned to travel to New York together that evening, but quarreled during their meeting and parted. Mrs. Sewell testified that her husband boarded a bus at about 2:45 in the afternoon, and that he was carrying about $360.00 in his pocket.

Sewell and the appellant arrived together at a motel in Northwest Washington about 4:30 on the same afternoon. A motel employee testified that he observed that Sewell was wearing a Bowie knife in a sheath. The two registered as man and wife and departed the lobby for their room. Approximately a quarter hour later, the desk clerk and two other employees heard a woman's screams emanating from the room occupied by Sewell and the appellant. They forced their way into the room and discovered the two on the bed struggling with a knife—a Bowie knife, as it was later ascertained. The employees separated them and summoned an ambulance for Sewell, who was bleeding. Appellant left the building at the time, but surrendered voluntarily to the police the next day. In the meantime, Sewell died from stab wounds inflicted during the struggle. The most serious wounds were in Sewell's chest and abdomen, but his arms and hands also exhibited cuts and slashes suggesting an attempt to repel an attack.

The appellant was indicted for second-degree murder. At the trial, it was the theory of the prosecution that the appellant was a prostitute whom Sewell had encountered in the course of the afternoon, and that she brought him to the motel in the course of plying her trade. On this theory, the appellant, dissatisfied with the amount Sewell paid her for her services, rummaged through his clothing while he was in a bathroom down a hall from their room and removed the money she found there. Sewell, returning, caught her in the act and attempted to retrieve his money, whereupon she stabbed him with the knife, which also lay among his clothes. In support of this scenario, the prosecution cited testimony that a motel employee had seen the appellant check into the motel with men on other occasions. In addition, the witnesses to the struggle agreed that the appellant was fully dressed but that Sewell was clad only in his trousers, and that the knife was pointed at his chest during the part of the struggle that they observed. There was money neither in Sewell's wallet, which was found in the motel room after the incident, nor in his pockets, which were searched at the morgue. Finally, the prosecution stressed the testimony of the nurse who examined the appellant the day after the incident; she found no cuts or wounds on any parts of the appellant's body.

Appellant's attorney advanced the contention that she had inflicted the stab wounds in self-defense. He elicited testimony from the motel's desk clerk to the effect that Mrs. Sewell had appeared at the motel after the incident and told him that Sewell "would use a knife." Mrs. Sewell denied having made the statement. Counsel for appellant also noted the presence of a pocket knife in Sewell's pocket when he was taken to the morgue, emphasized the uncontradicted evidence that *Sewell* had the

** Sitting by designation pursuant to 28 U.S.C. § 292(d).

1. The offense is defined by 22 D.C.Code § 2403.

Bowie knife at the time the pair checked in, and developed from one of the witnesses testimony that Sewell lay atop the appellant during the struggle.

Defense counsel had become aware, during pretrial interviews with witnesses, of the possibility that Sewell might have been arrested or convicted in the past for violent crimes. Before investigating Sewell's arrest and conviction record, however, he asked the appellant whether she knew of any violent episodes in Sewell's past; she knew of none. The attorney believed that a decedent's prior convictions for violent crimes were inadmissible to prove self-defense unless the person accused of the homicide knew of them. To reassure himself, he consulted an older lawyer who had some experience with criminal law; the older lawyer advised him that this view of the law was correct. He thus concluded that a search for Sewell's prior record would be a waste of time. Counsel also believed, he testified later, that the prosecution would advise him if they knew that Sewell had a criminal record. In any event, none of the evidence presented to the jury at trial suggested that Sewell had ever been arrested for or convicted of a crime of violence.

A month after the appellant was sentenced, defense counsel received a copy of this court's opinion in United States v. Burks.[2] The *Burks* opinion noted that this court has "long recognized" that evidence of past violent acts by a deceased is admissible in a homicide case in which the issue of self-defense is raised because "[s]uch evidence is relevant on the issue of who was the aggressor. . . ."[3] A footnote to that observation admonished that "[i]t bears emphasis . . . that as to the issue of who was the aggressor it is irrelevant that the defendant did not know about the deceased's character."[4] On learning of this long-recognized rule, of which he had been entirely ignorant, counsel became

alarmed and immediately sought to discover whether or not Sewell did, in fact, have a criminal record. He went to the United States Attorney's office and, finding the Assistant who had prosecuted the appellant absent, spoke with one of the other Assistants. The Assistant took appellant's counsel to a "closed files" room and located the file concerning the prosecution of the appellant. There, close to the front of the folder, they found a paper disclosing that Sewell had been convicted in 1963 for assault and carrying a dangerous weapon and in 1971 for carrying a dangerous weapon. The weapon, in each instance, had been a knife.

Defense counsel immediately filed a motion for new trial on the ground of newly discovered evidence. The trial judge denied the motion, expressing skepticism that "a CDW conviction and a '63 ADW conviction" would have made any difference in the jury's conclusions. Being convinced that his misunderstanding of the law had seriously prejudiced the appellant's plea of self-defense, her counsel later requested to withdraw, in order that the issue of his ineffectiveness could be raised by appellant's attorney on appeal.

Appellant asserts that her conviction should be reversed on three grounds. First, she contends that the trial judge erred in denying her motion for new trial. Second, she urges that her defense counsel's failure to bring Sewell's record of convictions before the jury deprived her of her sixth amendment right to the effective assistance of counsel. Finally, she argues that the prosecution denied her due process of law under the doctrine of Brady v. Maryland,[5] which prohibits "suppression by the prosecution of evidence favorable to an accused."[6]

█ It is unquestioned that a prosecutor's deliberate failure to supply defense counsel with information that tends to exculpate the accused constitutes prosecutorial misconduct meriting reversal of

2. 152 U.S.App.D.C. 284, 470 F.2d 432 (1972).

3. *Id.* at 434.

4. *Id.* at 434 n. 4.

5. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, (1963).

6. *Id.* at 87, 83 S.Ct. at 1196.

a conviction.[7] Neither party to this appeal has any quarrel with this principle. Nor can there now be any disagreement with the rule of *Brady* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[8] Appellee's first response is that the prosecution was not required to inform appellant's attorney of Sewell's record in the absence of a request for such information, and second, that the information was in any event of such small importance in the context of the case that failure to reveal it had no effect on the verdict of the jury.[9]

At the outset, it should be observed that defense counsel's attempts to request relevant information from the United States Attorney can not categorically be characterized as lacking in diligence. The record reveals that the attorney for appellant appeared at a calendar call shortly after he had been appointed to represent her and indicated that he wished to place a stipulation regarding discovery on the record. The attorneys had encountered no difficulties in agreeing upon discovery procedures and the scope of discovery up to that point; and the trial judge, therefore,

suggested to defense counsel that he return to court for formal discovery proceedings only in the event that he experienced difficulty in obtaining the materials that he desired from the office of the United States Attorney. Further, the trial judge commented that, in his experience, the United States Attorney's office always provided defense counsel with all discoverable material. Defense counsel thereupon assented to the trial judge's suggestion.

Even supposing that defense counsel's trusting attitude toward the prosecution, together with his failure to undertake a search for Sewell's prior criminal record, demonstrates some neglect of his duty to his client, that conclusion does not foreclose further inquiry into the possibility of unfairness to the accused. No clear consensus exists among the courts on the question of whether, in the absence of prosecutorial misconduct, a defense request is necessary to trigger the prosecution's duty to reveal possibly exculpatory information in its possession.[10] Rather than attempting to formulate universal rules, most courts faced with *Brady* challenges to convictions have examined various factors in the cases actually before them—including the diligence of defense counsel, the presence or absence of prosecutorial culpability, and the materiality of the undisclosed evidence—in arriving at their conclusions.[11] When defense

7. *See, e. g.,* Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957); Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935); United States ex rel. Thompson v. Dye, 221 F.2d 763 (3d Cir.), cert. denied, 350 U.S. 875, 76 S.Ct. 120, 100 L.Ed. 773 (1955); United States ex rel. Almeida v. Baldi, 195 F.2d 815 (3d Cir. 1952), cert. denied, 345 U.S. 904, 73 S.Ct. 639, 97 L.Ed. 1341 (1953).

8. 373 U.S. at 87, 83 S.Ct. at 1196; *accord* Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

9. The United States does not contend that the prosecution had no knowledge of Sewell's prior record, and indeed such a contention would almost certainly be unavailing in view of the fact, already mentioned, that the information, when finally discovered by the appellant's counsel, was in a folder maintained by

the office of the United States Attorney. *See* Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). This is not to say that the prosecution engaged in deliberate suppression.

10. Among cases that have imposed such a duty in the absence of a request are the following: United States v. Hibler, 463 F.2d 455 (9th Cir. 1972); United States v. Poole, 379 F.2d 645 (7th Cir. 1967); Barbee v. Warden, 331 F.2d 842 (4th Cir. 1964); United States ex rel. Meers v. Wilkins, 326 F.2d 135 (2d Cir. 1964); Simms v. Cupp, 354 F.Supp. 698 (D.Or.1972); Clements v. Coiner, 299 F.Supp. 752 (S.D.W.Va.1969). *But see* United States v. Keogh, 391 F.2d 138, 147 (2d Cir. 1968), in which Judge Friendly wrote that the court "cannot agree with petitioner that where there has not been deliberate suppression . . . the absence of a request is irrelevant."

11. *See* United States v. Mayersohn, 452 F.2d 521 (2d Cir. 1971).

counsel has been less than industrious, the prosecution guileless, and the evidence in question of doubtful materiality, the courts have found no due process violation requiring reversal of the conviction because of the mere fact that the prosecution had access to evidence that the defense would have desired.[12] On the other hand, a prosecutor's willful failure to disclose evidence that is clearly material upon defense counsel's timely request has always been held to constitute reversible error. The difficult cases, such as the case before the court, fall between the two extremes.

■ The materiality of undisclosed evidence is a much more significant factor than prosecutorial misconduct or defense negligence. Thus, nondisclosure of evidence that would have been of central importance to the defense had it been available will void a conviction even though the prosecution may have acted in good faith or defense counsel may have failed in his duty of diligence.[13] In Barbee v. Warden,[14] the Fourth Circuit reasoned that "[i]n gauging the nondisclosure in terms of due process, the focus must be on the essential fairness of the procedure and not on the astuteness of either counsel." In Levin v. Katzenbach,[15] this court held that a conviction obtained while defense counsel is ignorant of important potentially exculpatory evidence cannot be upheld merely because "more able, diligent, or fortunate counsel might possibly have come upon the evidence on his own."[16] Accordingly, the case was remanded for a determination of whether the un-

disclosed evidence, if brought to the attention of the jury, "might have led the jury to entertain a reasonable doubt about appellant's guilt."[17] Thus, we are constrained to consider the second point advanced by the appellee—that the evidence of Sewell's prior convictions is insufficiently material for its nondisclosure to require reversal of the appellant's conviction.

Appellant did not at any time deny that she had been responsible for Sewell's death or that she had wounded him with his Bowie knife. Her sole defense was her claim that he had initially attacked her with the knife, and that her actions had all been directed toward saving her own life. In a similar situation, the Supreme Court suggested that a prosecutor's failure to disclose that there was an open penknife in the deceased's pocket when his body arrived at the morgue would constitute a denial of due process, if the knife would be admissible under the trial court's customary rules of evidence.[18] In a murder case in which the defendant relied on self-defense, the Oregon Court of Appeals held that the prosecution's nondisclosure of a deceased's past violent history denied him due process of law.[19]

■ Moreover, Sewell's prior convictions for crimes involving knives seem at least as crucial as non-disclosed evidence which has led to reversals in other cases: e. g., the fact that a prosecution witness has been granted immunity in exchange for his testimony;[20] the statement of a witness to a complicated financial transaction that he had no memory of certain aspects of the transaction;[21] or the cir-

12. See, e. g., United States v. Soblen, 301 F.2d 236 (2d Cir.), cert. denied, 370 U.S. 944, 82 S.Ct. 1585, 8 L.Ed.2d 810 (1962); United States v. Fabric Garment Co., 262 F.2d 631 (2d Cir. 1958), cert. denied, 359 U.S. 989, 79 S.Ct. 1117, 3 L.Ed.2d 978 (1959).

13. E. g., United States v. Poole, 379 F.2d 645 (7th Cir. 1967); Levin v. Katzenbach, 124 U.S.App.D.C. 158, 363 F.2d 287 (1966); United States ex rel. Meers v. Wilkins, 326 F.2d 135 (2d Cir. 1964); Evans v. Kropp, 254 F.Supp. 218 (E.D.Mich.1966).

14. 331 F.2d 842, 846 (4th Cir. 1964).

15. 124 U.S.App.D.C. 158, 363 F.2d 287 (1966).

16. Id. at 162, 363 F.2d at 291.

17. Id. see Levin v. Clark, 133 U.S.App.D.C. 6, 408 F.2d 1209 (1967).

18. Griffin v. United States, 336 U.S. 704, 69 S.Ct. 814, 93 L.Ed. 993 (1949).

19. State v. Williams, 500 P.2d 722 (Ct.App.Or. 1972).

20. See Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

21. See Levin v. Clark, 133 U.S.App.D.C. 6, 408 F.2d 1209 (1967).

cumstance that a prior romantic entanglement existed between a homicide victim and the defendant's wife.[22] In an analogous situation, the Supreme Court held that suppression of evidence of the sexual escapades of a complaining witness in a rape case in which the issue was whether or not an act of intercourse was consensual denied the accused a fair trial, although the suppression was unintentional on the part of the prosecutor.[23] Further, in United States v. Burks,[24] this court reversed the conviction of a defendant found guilty of murder because the trial court refused to admit evidence of the exact nature of that denied the appellant herein. We there held that "the evidence he sought to introduce was vital to his defense."

The appellee argues that the convictions are merely cumulative of other evidence that did reach the jury from which it could be inferred that Sewell had a propensity to carry knives and use them aggressively. In particular, it cites the motel employee's testimony that Mrs. Sewell had told him that Sewell "would use a knife", the desk clerk's observation that Sewell was wearing a knife at the time the couple registered, and the testimony of one witness that Sewell was on top of the appellant during the struggle. Some of this evidence was weakened significantly by conflicting evidence. Mrs. Sewell, for example, testified that she never made the statement that the motel employee attributed to her. But the jury would not have been forced to resort to inferences from conflicting or ambiguous evidence in order to believe that Sewell had a proclivity for carrying and using knives if his past history had

been revealed to them. The records of his convictions upon pleas of guilty to two knife-related offenses would have constituted undeniable evidence of that trait.[25]

Accordingly, we hold that the evidence withheld by the prosecution in this case is sufficiently material and important to the question of the appellant's guilt or innocence[26] as to overcome any lack of diligence on the part of appellant's trial counsel. This decision renders unnecessary any consideration of the appellant's arguments concerning the trial court's denial of her motion for new trial and the alleged ineffectiveness of her trial counsel.

Reversed and remanded.

---

**22.** *See* Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957).

**23.** Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967).

**24.** 152 U.S.App.D.C. 284, 470 F.2d 432 (1972).

**25.** *See generally id.* at 289, 470 F.2d at 437 ("Nor is it significant that the appellant had already brought some attention to the child killing [by the deceased] by mentioning it when he testified on his own behalf. While the jury might have discredited his testimony on this issue, it would have had virtually no

choice but to believe [the deceased's wife] if she had taken the stand and testified that [the deceased] had killed their son.")

**26.** There is some force to the appellant's argument that even if the evidence of Sewell's history might not have affected the jury's verdict as to guilt or innocence, it might have influenced the jury to consider a verdict finding the appellant guilty of the lesser included offense of manslaughter. *See* United States v. Burks, 152 U.S.App.D.C. 284, 470 F.2d 432 (1972).