UNITED STATES, Appellant,

v.

Willie C. ENGRAM and Keith E. Gaffney,
Appellees.

No. 8706.

District of Columbia Court of Appeals.

Argued Feb. 20, 1975.

Decided May 14, 1975.

Rehearing and Rehearing en Banc
Denied June 24, 1975.

Donald E. Robinson, Jr., Asst. U. S.
Atty., with whom Earl J. Silbert, U. S.

Atty., John A. Terry and Henry F. Schuelke, III, Asst. U. S. Attys., were on the brief, for appellant.

Louis Seidman for appellee Engram. I. J. Crickenberger, appointed by this court, for appellee Gaffney.

Before KELLY and HARRIS, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

This appeal, pursuant to D.C.Code 1973, § 23–104(a)(1), challenges an order entered in the Criminal Division of the Superior Court May 22, 1974, suppressing as evidence all testimony of prosecution witnesses whose criminal and arrest records, if any, were not furnished pretrial to defense counsel.[1]

Appellees were charged by indictments returned December 23, 1973, with multiple criminal offenses, including rape, robbery, kidnapping, burglary, assault with intent to kill, all while armed, grand larceny and lesser included offenses.

At a status hearing April 1, 1974, counsel for appellees moved the court to require government counsel to furnish not less than seven days before trial the criminal and arrest records of government witnesses. Government counsel advised the court that consistent with the usual practice in his office he would furnish on the day of trial the record of any impeachable conviction of a prosecution witness. Counsel for appellees then represented to the court that:

I'm not only interested in impeachable convictions, I would like . . . to see what their records look like, and it might lead me to some further investigation on my own, depending on what turns up in their record. If I'm just given the record of impeachable convictions on the day of trial, I'm foreclosed from any investigation.

Declaring that, in its view, the records requested were *Brady* materials[2] the court reserved any ruling on the motion to permit the filing of an opposing memorandum. Thereafter by order entered April 23, 1974, the court granted the motion for the pretrial discovery requested saying:

The failure to provide information as to prior convictions of offenses which could not be used for impeachment purposes and the failure to provide information recorded in police records of prior arrests could result in an injustice. . . .

The cases were called for trial on May 2, 1974, before another Superior Court judge who in the meantime had assumed the felony calendar of the first judge. Informed that government counsel had not and would not comply with the April 23, 1974, order, the judge announced that in his view the order "established the law of the case" and that he would determine later the sanction to be imposed for its disobedience. The cases were then continued until May 8, for a further status hearing. When, on May 8, the proceedings were resumed the judge discussed with counsel the matter of an appropriate sanction for disobedience of the April 23, 1974, order and concluded that:

[T]he Court should . . . treat it as though it was a matter under the Jencks Act;[3] . . . the sanction should be

---

1. This order implemented the order of another Superior Court judge entered April 23, 1974, which required government counsel to "furnish to counsel for the [appellees] 'the records of each of the Government witnesses, such records consisting of all prior convictions for all offenses and for all prior arrests' ".

2. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

3. The Jencks Act, 18 U.S.C. § 3500, provides in (d) for the striking of the testimony of a witness upon the failure of the government to produce, as required by (b) and (c), any statement of such witness.

that the Court will suppress any testimony from those witnesses in which the Government has not supplied the information as ordered . . . .

The Court will . . . accordingly enter a written order this afternoon, so that if the Government wishes to take an appeal from that order, it may do so.

The court, however, entered no written order in these cases on the afternoon of May 8 but did, on May 22, enter a written order which reads in pertinent part:

[T]he Government is not permitted to call any person as a witness in this case unless, with respect to that witness, the Government has fully complied with the Memorandum Opinion entered . . . . April 23, 1974.

This appeal by the government from the May 22, 1974, order followed. We reverse.

■ We address at the outset challenges to this court's jurisdiction to entertain the appeal. Questioned first is the finality of the May 22, 1974, order for the purpose of an appeal.[4] The contention is that the order did not have the effect of denying the prosecution the use of evidence at trial because no attempt was made to present in open court the testimony of government witnesses.

This argument is wholly without substance. The May 22, 1974, order provides in language too clear for any doubt as to what was intended that the "Government is not permitted to call any person as a witness in this case unless . . . [it] has fully complied with the . . ." April 23, 1974, order. The government refused to comply with the order thus putting the case in the proper posture for an appeal. *See* United States v. Ryan, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971). The May 22, 1974, order suppressing, as it did, the testimony of the government's principal

witnesses "effectively terminated the prosecution" as did the orders in District of Columbia v. M. E. H., D.C.App., 312 A.2d 561 (1973), and United States v. Oliver, D.C.App., 297 A.2d 778, 780 (1972). We hold, therefore, that the May 22, 1974, order was appealable under D.C.Code 1973, § 23–104(a)(1).

Appellees made at oral argument an additional jurisdictional claim, *i. e.*, that the notice of appeal was not filed within the ten-day period prescribed by our Rule 4, pt. II(b)(1). What appears from the record is that when on May 2, 1974, the cases were called for trial before the second judge, he discussed with counsel the matter of an appropriate sanction to be imposed upon the government for the prosecutor's disobedience of the April 23, 1974, order of the first judge. The cases were then continued until May 8 for a further status hearing and at that time the judge announced:

[T]he sanction should be that the Court will suppress any testimony from those witnesses in which the Government has not supplied the information ordered . . . .

*The Court will . . . accordingly enter a written order this afternoon, so that if the Government wishes to take an appeal from that order, it may do so.* [Emphasis supplied.]

\*    \*    \*    \*    \*    \*

[T]he Court will enter its order in writing and furnish a copy to all counsel, and the Government could take an appeal from that order . . . .

On the same day a docket entry was made of the May 8, 1974, proceedings reflecting the judge's statements.

The court, as pointed out above, entered no written order in these cases the afternoon of May 8, 1974, but did enter on May

---

4. D.C.Code 1973, § 23–104(a)(1) provides:
   The United States . . . may appeal an order, entered before the trial of a person charged with a criminal offense, which . . . suppresses evidence, or otherwise denies the prosecutor the use of evidence at trial . . . .

22, 1974, a written order consistent with the court's oral pronouncements during the May 8, 1974, proceedings. Said the court in the written order:

> Accordingly, the Government will not be permitted to call as a witness in this case any person whose record has not been furnished to counsel for the [appellees] pursuant to the order . . . entered on April 23, 1974. The sanction the Court *now imposes* is appropriate . . . . [Emphasis supplied.]

■ We hold, in view of the foregoing, that the sanction complained of by the government was imposed by the written order entered May 22, 1974. It must follow, therefore, that the appeal, filed as it was on June 3, 1974, was timely. *See* United States v. Hark, 320 U.S. 531, 534–35, 64 S.Ct. 359, 88 L.Ed. 290 (1944); United States v. Lee, 163 U.S.App.D.C. 330, 501 F.2d 890 (1974).

We have examined carefully United States v. Fraser, D.C.App., 330 A.2d 761 (1975), and find it distinguishable on its facts. There the trial court granted orally a motion to suppress evidence. Immediately thereafter the prosecutor represented to the court:

> [A]s Your Honor knows, these matters are always reviewed by my superiors . . . to determine if appellate relief will be sought. . . . *If there is a decision to pursue an* [appellate] *remedy then I will prepare in writing for Your Honor to sign a written order confirming your findings here today.* [Emphasis supplied.]

On the same day a docket entry was made as follows: "Hearing on Motion to Suppress resumed and granted." Thereafter the government decided to appeal and six days later the prosecutor submitted a draft order which the trial judge signed and entered "hereby" granting the motion to suppress for the reasons orally stated by the court at the hearing on the motion. Notice

of appeal was filed within ten days after the entry of the written order but sixteen days after the trial court orally granted the motion to suppress. This court dismissed the appeal as untimely saying:

> The judge did not call for submission of a written order, thereby indicating a desire to delay a final ruling. Moreover, as the government observed, a written order, if submitted, would merely be an act "confirming" the earlier finding. In addition, submission of a written order was conditioned on a desire by the government to appeal.

In the case at bar it is too clear for further discussion that the second judge intended that the entry of a formal written order should condition the government's right to appeal for he stated repeatedly: " . . . [T]he Court will enter its order in writing and furnish a copy to all counsel, and the Government could take an appeal from that order".

Having thus disposed of appellees' jurisdictional claims we proceed to the disposition of the merits of this controversy. The issue is whether the trial court exceeded its jurisdiction when it suppressed as evidence the testimony of government witnesses whose criminal and arrest records were not furnished counsel for the appellees before trial.

Because the prosecutor offered to furnish at trial the records of any impeachable convictions,[5] we consider only whether it was error to require the prosecutor to furnish such records before trial and to furnish also, before trial, any other criminal record and any arrest record, even though the arrest did not result in an impeachable conviction.

The two trial judges involved were apparently influenced to their respective rulings by the notion that criminal and arrest records of government witnesses are "Brady materials." Determinative of the issue presented, therefore, is the answer to

---

5. D.C.Code 1973, § 14–305.

a preliminary question, i. e., whether discovery of such records from the prosecutor was compelled by the due process of law considerations that controlled the decisions in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny.[6]

In Moore v. Illinois, 408 U.S. 786, 794–95, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972), the Supreme Court said in reference to the doctrine of Brady v. Maryland, *supra*:

> The heart of the holding in *Brady* is the prosecution's suppression of evidence . . . *where the evidence is favorable to the accused and is material either to guilt or punishment.* Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence. [Emphasis supplied.]

*See also* Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), where the Court stressed that, "A finding of materiality . . . is required under *Brady* . . . ." Citing Brady v. Maryland, *supra,* the court said in United States v. Bryant, 142 U.S.App.D.C. 132, 137–38, 439 F.2d 642, 647–48 (1971): "The standard of constitutional coverage thus has turned upon the extent to which the evidence is 'favorable' to the accused. . . . [I]t is the law in this circuit that the due process requirement applies to all evidence which 'might have led the jury to entertain a reasonable doubt about [appellee's] guilt,' . . . ." [Footnote omitted.]

■ It would, in our opinion, defy reason to say that the records sought to be discovered in the cases at bar were evidence favorable to appellees or that such records were material in any way on the issue of appellees' guilt or punishment ex-

cept to the extent that their use would be permitted by D.C.Code 1973, § 14–305, for impeachment purposes. *See* Fenwick v. United States, 102 U.S.App.D.C. 212, 214, 252 F.2d 124, 126 (1958). From this it must follow that the only legitimate purpose that could have been served by the discovery sought would have been to provide appellees' counsel with records " . . . which might be used to impeach the credibility of Government witnesses, in so far as those records might reflect convictions . . . for crime." Simms v. United States, 101 U.S.App.D.C. 304, 307, 248 F.2d 626, 629 (1957). Sanford v. United States, 69 App.D.C. 44, 46, 98 F.2d 325, 327 (1938).

■ The government is committed to furnish at trial the records of all impeachable convictions. Such records will then speak for themselves and since their use must be restricted to impeachment purposes, Simms v. United States, *supra,* no prior investigation would be necessary or productive. Consequently, we are not impressed that any proper or meaningful investigatory purpose could be served by their production before trial.

■ The same must be said in respect to the arrest records of government witnesses. In the first place, such records are not material on the issue of credibility since, without more, they indicate only that the person arrested was suspected of an offense. Schware v. Board of Bar Examiners of the State of New Mexico, 353 U.S. 232, 241, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); United States v. Maynard, 155 U. S.App.D.C. 223, 476 F.2d 1170 (1973); Simms v. United States, *supra*; cf. United States v. Richter, 488 F.2d 170, 175 (9th Cir. 1973). Appellees insist, however, that in the preparation of their defense the arrest records are required as possible leads to something incriminating or impeaching. But we have found nothing in Brady v.

6. There is no contention that the records were discoverable pursuant to Super.Ct.Cr. R. 16, nor is there any contention that the

records were discoverable pursuant to the Jencks Act, 18 U.S.C. § 3500.

Maryland, *supra*, or in any other case relied upon by the appellees, which sanctions any such broad fishing expeditions into the affairs of government witnesses. Moreover as the Supreme Court said in Moore v. Illinois, *supra*, 408 U.S. at 795, 92 S.Ct. at 2568:

> We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.

Aside from all of this there is real concern that early pretrial discovery will lead to intimidation of witnesses. This concern was given expression in the concurring opinion in Harris v. United States, 140 U. S.App.D.C. 21, 25, 433 F.2d 1127, 1131 (1970), where it was said:

> Witnesses need protection against intimidating threats and assault, the Government needs protection against their witnesses being compromised and society needs the protection of criminal convictions that would flow from the production of truthful testimony of criminal acts being presented in court.

*See also* Davis v. United States, D.C.App., 315 A.2d 157 (1974); United States v. Eley, D.C.App., 286 A.2d 239 (1972).

■ We conclude from all of the foregoing (1) that with the exception of records of impeachable convictions, the criminal records and the records of arrests involved were not discoverable as *Brady* materials, and that (2) the suppression of the testimony of government witnesses, as a sanction for disobedience of the discovery order, was in excess of the court's authority and, therefore, constitutes reversible error. *Cf.* In the Matter of Iris Elaine · Banks, D.C.App., 306 A.2d 270, 274 (1973). *See also* United States v. Ryan, *supra*.

Reversed and remanded for further proceedings not inconsistent with this opinion.