UNITED STATES, Appellant,

v.

William AKERS, Sr., and William
Akers, Jr., Appellees.

No. 10451.

District of Columbia Court of Appeals.

Argued Sept. 16, 1976.

Decided June 2, 1977.

Larry C. Willey, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry, Theodore A. Shmanda and Albert H. Turkus, Asst. U.S. Attys., Washington D.C., were on the brief, for appellant.

Albert W. Overby, Washington, D.C., for appellee, William Akers, Sr.

Steffen Graae, Washington, D.C., for appellee, William Akers, Jr.

Dorothy Sellers, Washington, D.C., for amicus curiae, American Civil Liberties Union Fund of the National Capital Area.

Before FICKLING,* KERN and HARRIS, Associate Judges.

KERN, Associate Judge:

Appellees are charged with assault on three police officers in violation of D.C.Code 1973, § 22–505(a). The government appeals from a pretrial order directing the suppression of the officers' testimony at trial *unless* the prosecution turns over to appellees certain documents contained in the "personnel files" of the three officers.

The genesis of this appeal was appellees' pretrial motion for discovery and inspection of (1) all complaints alleging misconduct against these police officers, (2) any Police Department Forms 99 filed with respect to the officers, and (3) "supporting documents . . . reports, and results of any investigations" in connection with any complaints against the three police officers.[1] The trial court inspected in camera almost 900 documents, conducted two hearings in camera, and finally ordered 56 documents to be made available before trial to appellees for inspection and copying. The trial judge in his written opinion rested his ruling primarily on constitutional grounds:

> The Due Process Clause of the Fifth Amendment and fundamental fairness dictate that in order to develop and present their theory of the case, the accused are entitled to discovery, inspection and copying of all documents pertaining to complaints, allegations, investigations and reports, by citizens or relatives, police

---

* Judge Fickling participated at oral argument but died on March 6, 1977.

1. This court in *Cooper v. United States*, D.C. App., 353 A.2d 696 (1976), pointed out that the personnel record required by D.C.Code 1973, § 4–134, to be maintained by the Metropolitan Police Department for each police officer and open to public inspection, does not contain citizen complaints against any officer for alleged misconduct. Rather, a so-called Citizen Complaint Form (Form 99) is maintained separately by the Department pursuant to Metropolitan Police Department General Order 1202.-1(II)(A)(3) (1972).

officers, or police officials; provided such documents pertain to the instant case, or are otherwise relevant by virtue of an officer's prior abusive behavior, assaultive behavior, threats or uncommunicated threats, including the use of a service revolver or any other weapon, as well as the use of force or mace, while restraining, subduing or attempting to restrain or subdue a citizen while consummating an arrest, or when used for any other purpose.

Appellees and amicus curiae [2] urge that the trial court's order may be upheld under alternative theories. First, they argue that *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), requires production by the government because the documents are favorable to appellees' defense and are material to the issue of their guilt or innocence. Second, they assert that Super.Ct.Cr.R. 16(b) [3] requires production because the documents are material to the preparation of the defense case. Specifically, they argue that the documents (1) constitute evidence of the complainants' "prior assaultive or violent conduct" which would be admissible at trial to support the defense theory that "the police officers instigated the offense and acted with unreasonable force," (2) the documents "provide possible material for cross-examination on the officers' restraint or lack thereof," and (3) the documents "could lead" to other information showing complainants' "proclivity to abusive force" which is essential to trial preparation.

■ This court in *United States v. Engram*, D.C.App., 337 A.2d 488 (1975), *cert. denied*, 423 U.S. 1058, 96 S.Ct. 793, 46 L.Ed.2d 648 (1976), was presented with a "*Brady* request" similar to that urged here.[4]

There, the trial court suppressed the testimony of the complaining witnesses "whose *criminal* and *arrest* records, if any, were not furnished pretrial to defense counsel." *Id.* at 489 (emphasis added). On appeal, this court considered "whether it was error to require the prosecutor to furnish such records before trial, and to furnish also, before trial, any other criminal record and any arrest record, even though the arrest did *not* result in an impeachable conviction." *Id.* at 491 (emphasis added).

Analyzing the constitutional requirements of *Brady v. Maryland*, we concluded in *Engram*:

> It would . . . defy reason to say that the records sought to be discovered . . . were evidence favorable to appellees [defendants] or that such records were material in any way on the issue of appellees' guilt or punishment except to the extent that their use would be permitted by D.C.Code 1973, § 14–305, for impeachment purposes." [337 A.2d at 492.] [5]

We rejected also the argument that the arrest records were required under *Brady* to be produced pretrial in order to assist the defendants' *preparation of their defense* and aid in the investigation of "possible leads to something incriminating or impeaching." *Id.* at 492. Given this court's holding in *Engram* that the "*Brady* rule" does not require the government to produce before trial its witnesses' arrest records, a fortiori, we are constrained to conclude that the trial court erred here in ordering, based upon the constitutional dictates of *Brady*, discovery of documents that do not even reflect arrests of the witnesses.

---

2. This court permitted amicus curiae to file a brief in support of the trial court's ruling.

3. Subsequent to the trial court's ruling and the filing of briefs in this court, the rule was amended and the relevant language is now contained in Super.Ct.Cr.R. 16(a)(1)(C).

4. In *Engram, supra* at 492 n. 6, this court noted that defense counsel had not requested discovery pursuant to Super.Ct.Cr.R. 16.

5. D.C.Code 1973, § 14–305, provides that a witness may be impeached by a prior conviction of a felony or a criminal offense involving dishonesty or false statement. The examiner may introduce extrinsic proof of the conviction, *i. e.*, a certificate of conviction, if the witness denies the conviction on cross-examination.

It is vigorously argued to us as the alternative ground to support the trial court's order that Rule 16 provides "broader discovery" than *Brady* and the trial court did not abuse its discretion in finding the documents in question were material to the preparation of their defense and hence must be produced by the government before trial. Super.Ct.Cr.R. 16(a)(1)(C), effective December 1, 1976, *see* note 3 *supra,* provides in pertinent part: "Upon request of the defendant the prosecutor shall permit the defendant to inspect . . . documents . . . which are within the possession . . . of the government and which are *material to the preparation of his defense* " (emphasis added).

The documents are described by the trial court [6] as follows: six relate to the instant case and the government concedes they are subject to the Jencks Act, 18 U.S.C. § 3500 (1970), and must be turned over to the defense at the appropriate time; seven relate to the use of force by two of the officers in effecting arrests on prior occasions; 14 relate to two violent domestic quarrels between one of the officers and his wife; 19 relate to one officer's "use of his service revolver" on two prior occasions; five documents relate to juvenile criminal complaints filed against one of the officers in New York some 15 years ago; one document pertains to a grievance filed by one of the officers two years ago; and seven documents pertain to a citizen's complaint against one of the officers which was withdrawn by the complainant shortly after being filed.

We now take up appellees' contention that these documents are material to the preparation of the defense under Rule 16 because they reflect "prior assaultive or violent conduct" on the part of the officers and therefore would be admissible at trial to show their violent character and hence support appellees' claim they acted *only* in self-defense. We note that appellees do not assert that they knew at the time of their alleged assault the reputation of any of the officers for violence and we have heretofore stated that knowledge on the part of a defendant of such reputation is a prerequisite to admissibility of prior acts of violence by the complainant when self-defense is asserted. *Cooper v. United States,* D.C. App., 353 A.2d 696, 700 n. 8 (1976); *King v. United States,* D.C.Mun.App., 177 A.2d 912, 913 (1962). Appellees argue, however, citing *United States v. Burks,* 152 U.S.App. D.C. 284, 286 n. 4, 470 F.2d 432, 434 n. 4 (1972), that evidence of specific violent acts by the complainant in the past may be introduced into evidence, even if unknown to the defendant, to show the violent character of the complainant where the narrow issue of who was the first aggressor is posed. However, this proposition is limited to homicide cases where the defendant raises the claim of self-defense against the *decedent* as the alleged first aggressor. That is, in recognition of his absence from the trial, an exception is necessarily made to the general rule against showing conduct by proof of character.[7] 1 J. Wigmore on Evidence § 198 (3rd ed. 1940). *See United States v. Agurs,* 167 U.S.App.D.C. 28, 510 F.2d 1249 (1975) *rev'd on other grounds,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (second-degree murder); *Evans v. United States,* 107 U.S.App.D.C. 324, 277 F.2d 354

---

**6.** We have not examined the documents (which are under seal) but have relied on the trial court's description contained in the appendix to its opinion.

**7.** Rule 404(b) of the Federal Rules of Evidence provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In commenting on the general principle embodied in Rule 404(b) that conduct of a person on a particular occasion may *not* be shown by proof of character, the federal circuit court of appeals here recently has commented the "rule countenances admission of 'bad acts' evidence that is relevant to any material issue in the case except to show the likelihood that, having once fallen into sin a second slip is likely." *United States v. James,* D.C.Cir., 555 F.2d 992, at 998–999 (1977) (footnotes omitted).

(1960) (second-degree murder); *Griffin v. United States*, 87 U.S.App.D.C. 172, 183 F.2d 990 (1950) (first-degree murder).

■ Thus, we deem it error for the trial judge to have granted the discovery request under Rule 16 on the theory that appellees would be permitted at trial to introduce the documents as evidence of specific acts of violence by the officers to prove they were of violent character and hence likely to have been the first aggressors in this prosecution for assault.[8]

■ Appellees' second basis for urging that all the documents are material to the preparation of the defense is that even if inadmissible, nevertheless, the defense may use them at trial in cross-examining the complainants in order to impeach their credibility as witnesses. The federal circuit court has suggested that a cross-examiner may ask a witness about a prior act of misconduct which falls short of arrest or conviction provided (1) the examiner has a factual predicate for such question, and (2) the bad act "bears directly upon the veracity of the witness in respect to the issues involved in the trial." *Kitchen v. United States*, 95 U.S.App.D.C. 277, 279, 221 F.2d 832, 834 (1955), *cert. denied*, 357 U.S. 928, 78 S.Ct. 1378, 2 L.Ed.2d 1374 (1958). *See* 3A J. Wigmore on Evidence § 983 (Chadbourn Rev. 1970); 98 C.J.S. *Witnesses* § 515 (1957).[9] Even if we were to view the documents here as reflecting prior acts of misconduct by the officers, *viz.*, unlawful as-

saultive acts, this court has expressly held that the crime of assault does not involve dishonesty or false statement. *Williams v. United States*, D.C.App., 337 A.2d 772 (1975). Hence, appellees' counsel would not be permitted to use the documents to impeach the credibility of the officers even under the circuit court's *Kitchen-Robinson* theory.

■ The third basis asserted by appellees for finding the documents are material to the defense preparation within the meaning of Rule 16 is that: "[t]he obligation of defense counsel to his or her client . . . [to engage in] [t]horough preparation . . . necessarily requires access to all relevant information, whether obtained in the course of counsel's own investigation or by way of discovery from the Government. Indeed, counsel cannot properly advise a client on whether to plead guilty or go to trial, or in deciding on the best strategy to employ for trial without access to information that would tilt the balance in favor of one course or another."[10] However, we fail to perceive how these documents, essentially unuseable as they are, would be material to counseling the defendants on whether to plead guilty or go to trial. Moreover, appellees have already asserted the defense strategy for trial, *viz.*, that the officers used excessive force in effecting arrest and appellees were defending themselves rather than assaulting the officers. Given the re-

---

8. We have grave reservations that most of the documents in question could even be classified as being indicative of violent acts of conduct within the reach of *Burks*. The juvenile complaint filed in another state 15 years ago, to which five of the documents pertain, and a grievance filed by one of the officers, reflected in one of the documents, are simply too remote to the issue of "first-aggressor"; the documents pertaining to a citizen's complaint of brutality by one of the officers, which was withdrawn almost immediately after it was filed, do not permit an inference that the officer had actually committed an act of violence against that citizen; and the documents reflecting use of force by the officers in effecting arrests, in the absence of a showing that the force so employed was excessive, are not probative on the issue of violent character.

9. The circuit court has pointed out that the cross-examiner must "take" the witness' answer to his question without (1) further inquiry or (2) proof by extrinsic evidence. *United States v. Robinson*, 174 U.S.App.D.C. 224, 530 F.2d 1076 (1976); *cf.* D.C.Code 1973, § 14–305; note 5 *supra*.

10. ABA Standards, Discovery and Procedure Before Trial § 1.2, *Scope of Discovery* (Approved Draft, 1970) provides: "In order to provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with protection of persons, effective law enforcement, the adversary system, and national security."

sponsibility of defense counsel to pursue pretrial investigation, whether or not discovery is permitted, we cannot agree that production of these particular documents would in any way influence the decision by counsel to investigate the facts truly at issue before trial.

Under the circumstances, we conclude the trial court abused its discretion in ordering discovery of the documents and in suppressing the testimony of the arresting officers pretrial when the government properly declined to produce such material.

*Reversed and remanded.*