**In the Matter of M.W.G., Appellant.**

**No. 79–934.**

District of Columbia Court of Appeals.

Argued June 17, 1980.
Decided Feb. 26, 1981.

Joel D. Worshtil, Hyattsville, Md., appointed by the court, for appellant.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D.C., at the time the brief was filed, were on the brief, for appellee.

Before KELLY and NEBEKER, Associate Judges, and BOWERS, Associate Judge, Superior Court of the District of Columbia.*

KELLY, Associate Judge:

Appellant was adjudicated a delinquent for having used "obscene and indecent words . . . under circumstances such that a breach of the peace might be occasioned thereby" in violation of D.C. Code 1973, § 22–1107, and for assaulting a police officer in violation of D.C. Code 1973, § 22–505(a). He appeals his delinquency adjudication on the grounds that (1) his words did not constitute a violation of the breach of the peace statute, (2) the trial judge erred in granting the government's motion to quash a subpoena requesting discovery of the police officer's personnel records, and (3) the evidence does not support the findings that he committed the charged offenses. We reverse the breach of the peace adjudication and affirm the assault adjudication.

I

At the fact-finding hearing, the victim of the alleged assault, Officer Joseph C. Harris, gave his version of the events. Appellant did not testify but his two companions gave accounts of the incident differing in some respects from Officer Harris' testimony. Bearing in mind that the evidence must, on appeal, be viewed in the light most favorable to the appellee, *Wray v. United States*, D.C.App., 315 A.2d 843, 844 (1974), the record discloses the following facts.

On April 11, 1979, at approximately 11:55 p. m., Officer Harris and a colleague, Officer Nelson Smith, both of whom were off duty, were enjoying a meal in the Holly Farms Restaurant at 3131 Rhode Island Ave., N.E. Smith had on civilian clothing and Harris was wearing a civilian jacket over police clothing. Harris wore his badge on his shirt and had his police revolver at his side.

Appellant and four male friends entered the restaurant, behaving in a loud and boisterous manner, and seated themselves at a rear table. According to Harris, the appellant then went to the counter and, without paying for it, took a container of potato salad. Harris told him to return it and he did. The young men continued to conduct themselves in a rowdy manner which prompted Harris to tell them to leave the restaurant. The youths objected to the order and questioned Harris as to his authority to give such a command. The testimony is in conflict as to whether or not appellant was aware at that point that Harris and Smith were police officers. Nonetheless, the young men eventually decided to comply. Appellant lingered in the restaurant after his companions had exited. Although there was testimony of a scuffle between appellant and Harris while they were inside the restaurant, the court declined to find appellant committed an assault inside the building.

The dispute between Harris and appellant continued after both had left the premises. Once outside, Harris followed appellant and his group down the street. It was at that point that appellant committed the assault for which he was adjudicated a delinquent. Appellant and one other young man were arrested by Officer Harris and taken away in a patrol car which was driving by the scene.

II

Our analysis, on the particular facts of this case, of the breach of the peace charge begins by focusing on the spoken words and considers only those remarks specifically attributed to the appellant individually. Therefore, the offense must arise from the following remarks as recounted by Officer Harris, which were made as appellant and the others were leaving the restaurant after being told to do so by the two officers:

When we got back to the door, [appellant] stated to me you know, if you wasn't wearing that gun, I'd f___ you up.

In determining whether, in these circumstances, there was a violation of D.C.Code

---

* Sitting by designation pursuant to D.C. Code 1973, § 11–707(a).

1973, § 22–1107,[1] we apply the statute's "narrowing construction" mandated by *Williams v. District of Columbia*, 136 U.S.App. D.C. 56, 419 F.2d 638 (1969), a decision binding on this court under *M.A.P. v. Ryan*, D.C.App., 285 A.2d 310 (1971). *Williams* held that the statutory prohibition against profane or obscene language in public is constitutional only if interpreted to include the requirement that the language used created a substantial risk of provoking violence or was so grossly offensive as to constitute a nuisance. Williams' disorderly conduct conviction was reversed only because the charging information had supposedly been drawn on the assumption that a threatened breach of the peace was not an essential element of the crime and that the statute was violated simply by the utterance of profane or obscene language in a public place. *Id.* at 65, 419 F.2d at 647.

■ If this disorderly conduct charge is to stand, it must be based upon the effect of appellant's language on two police officers. We do not agree that appellant's words, directed at the officers, created the requisite threatened breach of the peace. Police officers are trained to deal with unruly and uncooperative members of the public. A police officer is expected to have a greater tolerance for verbal assaults, *Stewart v. United States*, 428 F.Supp. 321, 323 (D.C. Cir. 1976); and because the police are especially trained to resist provocation, we expect them to remain peaceful in the face of verbal abuse that might provoke or offend the ordinary citizen. Since this case is easily distinguished from others showing that citizens in the vicinity of a verbal dispute might have been provoked or offended,[2] the trial court erred in finding that appellant violated the statute.

As the *Williams* court stated, "[T]he circumstances under which words are spoken are of critical importance in deciding whether the Constitution permits punishment to be imposed." *Williams v. United States, supra* at 63, 419 F.2d at 645. This record fails to support a finding that appellant created a substantial risk of a breach of the peace because the character of appellant's behavior was not such that it should have provoked a violent response by police officers.[3]

Given the important constitutional considerations at stake whenever a criminal sanction is threatened for an offense that at least in part arises from the use of language, the Supreme Court has held that to justify an arrest for disorderly conduct, the words uttered must be lewd, obscene, insulting, fighting words, which tend by their very nature to incite a breach of the peace. *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Chaplinsky v.*

1. The statute reads in pertinent part:
   It shall not be lawful for any person or persons within the District of Columbia to congregate and assemble in any street, avenue, alley, road, or highway, or in or around any public building or inclosure, or any park or reservation, or at the entrance of any private building or inclosure, and engage in loud and boisterous talking or other disorderly conduct, or to insult or make rude or obscene gestures or comments or observations on persons passing by, or in their hearing, . . . it shall not be lawful for any person or persons to curse, swear, or make use of any profane language or indecent or obscene words, or engage in any disorderly conduct in any street, avenue, alley, road, highway, public park or inclosure, public building, church, or assembly room, or in any other public place, or in any place wherefrom the same may be heard in any street, avenue, alley, road, highway, public park or inclosure, or other building, or in any premises other than those where the offense was committed, under a penalty of not more than $250 or imprisonment for not more than ninety days, or both for each and every such offense.

2. *See, e. g., Gueory v. District of Columbia*, D.C.App., 408 A.2d 967 (1979) (openly flouting police officer's request with inflammatory language on city streets during afternoon; passersby attracted by commotion); *Rodgers v. United States*, D.C.App., 290 A.2d 395 (1972) (appellant causes disturbance at public concert).

3. The fact that a physical confrontation with the officers did occur does not determine the inquiry into whether or not there was a substantial risk of provocation. Officer Harris does not allege that he was provoked to a violent response by appellant's verbal assault. Rather, he alleges that he defended himself against appellant's later physical assault.

*New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). We are here convinced that the government failed to carry its burden of proving that appellant's words, in the context of this confrontation with a police officer, justified a finding of disorderly conduct.

III

■■■ Appellant challenges, on two grounds, the finding that he violated D.C. Code 1973, § 22–505(a). He first claims the trial court abused its discretion in granting the government's motion to quash the subpoena *duces tecum* by which he sought production of disciplinary records and records of citizen complaints filed against Officer Harris pertaining to the use of excessive force. The motive for requesting these documents was to show, assuming there were records of past violent conduct, that appellant acted in self-defense. A government motion to quash (pursuant to Super.Ct. Juv.R. 17(c)), asserting the records were confidential and therefore privileged, was granted without an *in camera* inspection of the documents.[4]

We held in *United States v. Akers*, D.C. App., 374 A.2d 874 (1977), a prosecution for assaulting a police officer, that it was error to grant the defendant's request for discovery of material contained in a police officer's personnel file. The rationale in *Akers*, and in a preceding case, *United States v. Engram*, D.C.App., 337 A.2d 488 (1975), *cert. denied*, 423 U.S. 1058, 96 S.Ct. 793, 46 L.Ed.2d 648 (1976), was that *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), does not require the government to produce such documents because they are not "material to the issue of guilt or innocence" nor are they necessary to assist in the preparation of a defense. *United States v. Akers, supra* at 876. We also rejected the argument that Super.Ct. Cr.R. 16 required compliance with the discovery request for the same reason that *Brady* did not require such production, the

reason being that at the time of the alleged assault the defendant was not aware that any of the officers had a reputation for violence, and as we stated in *Cooper v. United States*, D.C.App., 353 A.2d 696, 700 n.8 (1976), except in a homicide case, knowledge of the complainant's reputation is a prerequisite to admissibility of prior acts of violence when a claim of self-defense is asserted. *United States v. Akers, supra* at 877.

We are not persuaded by the subtleties of appellant's argument that by the time of the assault which occurred outside the restaurant appellant had acquired knowledge that Officer Harris had a reputation for violence. According to appellant, he learned of the officer's alleged violent proclivities during the confrontation inside the restaurant, and therefore, under *Akers*, he was entitled to access to Harris' records in order to prepare a self-defense defense to the charge of assaulting Harris outside the restaurant. In analyzing the legal consequences of the events of April 11, 1979, there may be some purposes for which the events inside may be disconnected from that which occurred outside the restaurant. However, in the context of the requirement contemplated by *Akers*, these events are not separable. *Akers* requires that, except in a homicide case, one who would discover evidence to be used to show an assault victim's reputation for violence must have had knowledge of that reputation before the contact which culminated in the alleged assault. Our concern is that defendant not be permitted to embark upon a fishing "expedition" into privileged personnel records unless there exists a basis for introducing at trial the evidence sought. If the defendant was unaware of the victim's reputation prior to the assault, the evidence allegedly contained in the records would be inadmissible. Unfortunately, the confrontation between Officer Harris and the appellant did not end upon their leaving the restaurant. If in the first round of the contest appellant

---

4. Since the trial court's ruling was based on the premise that, even if it existed, the material sought would not be admissible, there was no

abuse when it refused to exercise its discretion to examine the documents *in camera*.

was ignorant of a reputation for violence attributed to Officer Harris, appellant was no more enlightened by the time the second round began. Therefore, there was no abuse of discretion in ruling that, having failed to satisfy the *Akers* requirement, appellant was not entitled to the privileged information sought by the subpoena.

## IV

Appellant contends, finally, that the evidence was insufficient to justify the finding that he assaulted Officer Harris. In particular, he questions the proof of that element of the offense of assaulting a police which requires that the defendant knew or should have known that the complainant was a police officer. *Fletcher v. United States*, D.C.App., 335 A.2d 248 (1975). Officer Harris testified that before the initial scuffle he identified himself as a police officer. Although appellant's companions disputed that statement in their testimony, we are obliged to consider the facts in the light most favorable to the appellee. *Wray v. United States, supra*. Regardless of whether or not appellant was aware inside the restaurant that Harris was a policeman, by the time they had gone outside appellant had had an opportunity to clearly view Harris' gun and police clothing. The assault for which appellant was eventually adjudicated delinquent took place outside the restaurant. The evidence was sufficient to prove that at that point appellant should have been aware he was confronting a policeman.

Our review of the record discloses that there was also adequate evidentiary support, particularly the testimony of Officer Harris, for the finding the appellant was not acting in self-defense.

The adjudication of delinquency for assaulting a police officer is affirmed. The breach of the peace adjudication is reversed.

*So ordered.*