**UNITED STATES of America,**

**v.**

**Frank SOYKA, Defendant.**

**No. 66 Cr. 461.**

United States District Court
S. D. New York.

March 10, 1967.

Robert M. Morgenthau, U. S. Atty., for the United States; Charles P. Sifton, Asst. U. S. Atty., of counsel.

Selig Lenefsky, New York City, for defendant.

### MEMORANDUM

FREDERICK van PELT BRYAN, District Judge.

This is a motion pursuant to Rule 41 (e), F.R.Cr.P., to suppress as evidence 27.430 grams of heroin hydrochloride seized incident to the arrest of defendant Soyka and to obtain other relief. An evidentiary hearing was held before me

on the motion to suppress on November 2, 1966.

The validity of the search in this case depends upon the validity of the arrest. If the arrest was lawful, that is, based on probable cause, there is no doubt that the search was incident thereto. E. g., United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). Thus the sole issue is whether at the time of the arrest, made without a warrant, the arresting agents had reasonable grounds for believing that defendant Soyka had committed or was committing a violation of the narcotics laws. Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); United States v. Rivera, 321 F.2d 704 (2d Cir. 1963); 26 U.S.C. § 7607.

█ There is no doubt that "[t]he quantum of information which constitutes probable cause * * * must be measured by the facts of the particular case." Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 413, 9 L.Ed.2d 441 (1963); see Go-Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 75 L.Ed. 374 (1931). And these facts must be weighed in light of the "practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).

I find the following facts to have been established at the hearing. In so doing I accept the testimony of the two agents and reject as incredible the testimony of defendant's witnesses insofar as it conflicts with the agents' testimony.

On June 17, 1966, Agent Guy, one of the officers present during the arrest, received information over the telephone from an anonymous informant that an individual named Frank Soyka "was obtaining large quantities of pure heroin and selling heroin in ounce and half-ounce packages out of his apartment."

Agent Guy was able to recognize the informant's voice on the basis of having heard it at least a dozen times in telephone conversations, and on numerous occasions he had unsuccessfully attempted to learn the identity of the caller. The information relayed by this informant had proved to be reliable in the past and specifically had resulted in three arrests and two convictions.

During the call of June 17, lasting about ten minutes, the informant furnished Agent Guy with detailed information as to Soyka's description—that he was a white male, approximately six feet tall, two hundred pounds, with a glass eye; and that he customarily wore a black three-quarter length leather jacket. The informant also described Soyka's residence with some particularity: that the apartment, No. 57, was on the fifth floor of the building at 264 W. 19th Street to the right of the stairway; that the doorway was barred by a police lock and crossbar, with a keyhole and peephole visible from the outside; that the windows to the apartment were barred; and that a small dog was kept inside. In addition, the informant told Agent Guy details about Soyka's prior criminal record and about a recent change of his phone number.

Agent Guy then proceeded to verify the details of the informant's communication; and as in Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960), "[h]is story was corroborated by other sources of information." The phone number, indeed, had been recently changed to an unlisted number; the information as to Soyka's criminal record was substantially correct. During the course of this investigation Agent Guy obtained a photograph of Soyka from the New York Bureau of Criminal Investigation. He then communicated his findings and displayed the photograph to a fellow agent Waters.

On the afternoon of June 18th, 1965, the informant called again and stated to Agent Guy—Agent Waters was listening on an extension—that Soyka was at that time in possession of "the remains of an

eighth of a kilogram of heroin." The two agents, along with a detective from the New York City Police Department, shortly thereafter proceeded to Soyka's apartment to check out its description in order to furnish a further basis for the issuance of a search warrant. Once again, the information as to the physical particulars of the area provided by the informant was proved to be correct—the location of the apartment, the nature of the lock and the peephole.

But as the agents climbed to the roof for the purpose of determining whether the windows were barred, Soyka opened his apartment and stood face to face with Agent Waters, the last officer proceeding up the stairs. The agent recognized him immediately from the photograph and the description provided by the informant—six feet tall, two hundred pounds, a glass eye, and wearing a three-quarter length black leather jacket. Soyka quickly jumped back into the apartment and attempted to close the door, but Agent Waters, having identified himself, placed the defendant under arrest and prevented him from closing the door. The agents then went with the defendant into the apartment through the open door. The narcotics which are the subject of this motion were discovered in a cabinet while the agents were searching the kitchen which was the place where informant said they would be found.

Under these circumstances I conclude that there existed probable cause for the arrest. The informer on prior occasions had proved reliable. See Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1957); United States v. Robinson, 354 F.2d 109, 111 (2d Cir. 1965) (en banc); United States v. Rivera, supra, 321 F.2d at 708–09; United States v. Nicholas, 319 F.2d 697 (2d Cir.), cert. den., 375 U.S. 933, 84 S.Ct. 337, 11 L.Ed.2d 265 (1963). The information supplied with respect to Soyka, insofar as it could be corroborated, was verified by the investigating agents. Ker v. State of California, 374 U.S. 23, 35–36, 83 S.Ct. 1623, 10 L.Ed.2d 726

(1963); United States v. Monticallos, 349 F.2d 80, 81–83 (2d Cir. 1965); Cali v. United States, 338 F.2d 974, 977 (1st Cir. 1964). Thus, unlike United States v. Robinson, 325 F.2d 391 (2d Cir. 1963), compare United States v. Elgisser, 334 F.2d 103 (2d Cir.), cert. den., 379 U.S. 881, 85 S.Ct. 151, 13 L.Ed.2d 87 (1964), the agents had sufficient evidence to establish probable cause apart from the uncorroborated confidential communication of the informant. Soyka's physical appearance, his hasty retreat back into the apartment, and his attempt to close the door all lent color to the information which had been made available to the agents. "[W]ith every other bit of [the informant's] information being thus personally verified," the agents certainly had reasonable grounds for believing "the remaining unverified bit of [the] information—that [Soyka] would have the heroin [in his kitchen cabinet]—was likewise true." Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1957).

Moreover, the sudden appearance of Soyka on the scene plainly necessitated the agents changing "their intention from obtaining information * * * to that of making an arrest." United States v. Nicholas, 319 F.2d 697, 698 (2d Cir.), cert. den., 375 U.S. 933, 84 S. Ct. 337, 11 L.Ed.2d 265 (1963). Unlike Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), and Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932), under the circumstances of this case there was a real possibility that the contraband would be removed or destroyed. An immediate arrest was necessary. See, e. g., United States v. Luster, 342 F.2d 763, 766 (6th Cir. 1965). Time was of the essence.

■ Under these circumstances I conclude that the agents had probable cause for arresting defendant Soyka. Since the search was incident thereto, the motion to suppress is in all respects denied.

■■ The other relief sought on this motion requires little discussion. The motion to suppress "all confessions, ad-

missions or statements" made by defendant is premature, for there is nothing before the court to indicate that the government intends to use such statements—if any exist—at the trial of this case. The motion for discovery of "all government records, papers and documents" must also be denied. There has been neither a "showing of materiality" nor a demonstration that the "request is reasonable." Rule 16(b), F.R.Cr.P.

The foregoing constitutes my findings of fact and conclusions of law on the hearing on the motion to suppress.

The motions are in all respects denied.

It is so ordered.