Willie SMITH, Jr., a/k/a Willie Smith,
Appellant,

v.

UNITED STATES, Appellee.

No. 9609.

District of Columbia Court of Appeals.

Argued June 23, 1976.

Decided Sept. 30, 1976.

W. Gary Kohlman, Washington, D.C., appointed by this court, for appellant. Douglas C. Dodge, Washington, D.C., also

appointed by this court, was on the brief for appellant.

John L. Kern, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry, William D. Pease, and Eugene M. Propper, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KELLY, GALLAGHER and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

This appeal arises from convictions by a jury of first-degree burglary in violation of D.C.Code 1973, § 22–1801(a), and rape in violation of D.C.Code 1973, § 22–2801. Appellant contends (1) that he was denied due process of law because the government did not disclose under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963), the results of a scientific report made by the FBI and (2) that the trial court erred in denying his motion for judgment of acquittal. We disagree and affirm the convictions.

The complainant was awakened in the early morning hours by the crying of her baby and saw appellant coming through her window. Appellant demanded that she submit to sexual intercourse or he would harm her and her child. He then proceeded to rape her. In doing so, he did not remove his trousers, but simply opened his zipper. After he had left, the victim called the police and was taken to D.C. General Hospital for examination. Appellant returned to the victim's residence several times over the next four days. He was arrested when the victim was able to engage him in conversation long enough for a friend to telephone the police. Appellant was identified by the victim as well as by a neighbor who had seen him attempting to crawl through the victim's window the night before the rape occurred.

Appellant alleges that the government improperly withheld until trial a scientific report from the FBI which indicated that none of appellant's pubic hair was found after a combing had been taken from the victim and after an examination of her bedding for hair had been made. Contending that because of this disclosure delay he was denied due process of law under the doctrine of *Brady,* appellant seeks a reversal and a new trial.

■ *Brady* held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland, supra* at 87, 83 S.Ct. at 1197. We note first, that the record does not disclose a defense request either specifically for results of scientific tests under Super.Ct.Crim.R. 16(a), or generally for *Brady* material. More importantly, the rule of *Brady* applies basically in three situations, each involving the discovery after trial of information which had been known to the prosecution but unknown to the defense. *See United States v. Agurs,* — U.S. —, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The record in the instant case reveals that defense counsel received the report from the government during the pretrial motion hearing on the day trial began, not after trial. If counsel felt that she had inadequate time to make use of the report, her remedy would have been to ask for a short respite, which she failed to do.

■ Even assuming *arguendo* that the timing of the defense discovery of the hair and fiber report was within the scope of *Brady* and that the disclosure delay amounted to an exclusion of the report from the trial, appellant was not denied a fair trial. A prosecutor has no constitutional duty routinely to deliver his entire file to defense counsel, nor can a court consistently treat every nondisclosure as though it were error.

In *United States v. Agurs, supra* at ——, 96 S.Ct. at 2401, the Court, in clarifying

the rule of *Brady,* enunciated a standard to be applied either in advance of the trial by a prosecutor or after the trial by a judge in deciding when the prosecutor has a constitutional duty to disclose matter to the defense and what standard of materiality gives rise to that duty:

> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. . . . [Footnotes omitted.]

It would seem from the foregoing that the threshold of materiality, triggering a duty to disclose whether on request or not (*id.* at ——, 96 S.Ct. 2392), is set at the level of creation of a reasonable doubt when the new evidence is viewed by the Court in a complete record context. While the majority did advert to the notion that "the defendant should not have to satisfy the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal" (*id.* at ——, 96 S.Ct. at 2401; footnote omitted), the standard of materiality as expressed by the majority remained in the language chosen despite the specific misgivings in the dissent. *Id.* at ——, 96 S.Ct. 2392. Whether the Court meant that materiality exists only when the new evidence gives rise to a reasonable doubt, and thus entitlement to a judgment of acquittal, we need not now decide. What is clear is that from the entire record, including the report, "guilt beyond a reasonable doubt . . . [is an]

entirely reasonable" conclusion. *Id.* at ——, 96 S.Ct. at 2402.

■ Moreover, the absence of appellant's pubic hair at the scene is not indicative of innocence. The evidence showed that appellant had left his trousers on and simply opened his zipper to have intercourse. Thus, the presence or absence of appellant's pubic hair on the victim's sheet, panties, or person in this context is insignificant with respect to the contested issue —appellant's presence on the night of the rape. There is no reasonable doubt about appellant's guilt with or without the additional evidence and, therefore, there is no justification for reversal of his conviction on this ground.

■ Appellant also contends that the evidence of the use of physical force and threats was insufficient as a matter of law to establish a lack of consent and that the trial court therefore erred in denying appellant's motion for judgment of acquittal. The government was not required to establish that the act of sexual intercourse was forcibly consummated. "It was enough that the [victim was] shown to have had at that time a reasonable belief induced by threats that [she] faced death or serious bodily harm." *Arnold v. United States,* D.C.App., 358 A.2d 335, 340 (1976). *See also Johnson v. United States,* 138 U.S. App.D.C. 174, 426 F.2d 651 (1970); *Ewing v. United States,* 77 U.S.App.D.C. 14, 16, 135 F.2d 633, 635 (1942), *cert. denied* 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1943). The record reveals a sequence of events which establish that appellant utilized physical force and threats to overcome the victim's resistance. Her final submission was solely the result of her fear of bodily injury to herself and to her infant son. Therefore, the trial judge was correct in denying the motion for judgment of acquittal.

Accordingly, the convictions are

*Affirmed.*