**Bradford BROWN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 10482.**

District of Columbia Court of Appeals.

Argued Nov. 30, 1976.

Decided April 14, 1977.

---

William Jordan Temple, Washington, D. C., for appellant.

David R. Addis, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, and William J. Hardy, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before NEWMAN, Chief Judge, and NEBEKER and HARRIS, Associate Judges.

NEWMAN, Chief Judge:

Appellant, Bradford Brown, convicted by jury of second-degree murder, assault with a dangerous weapon, and carrying a pistol without a license, was sentenced to terms of confinement. He appeals asserting as reversible error: (1) the failure of the government to preserve certain evidence which, he contends, constitutes a breach of a duty implicit in Super.Ct.Cr.R. 16 as well as a denial of due process; and (2) the insufficiency of the evidence. Concluding that there is no reversible error, we affirm.

In the evening hours of November 2, 1974, Ms. Holton and Mr. Baltimore were outside her residence in the District of Columbia. The area was well lit. A man, later identified by Ms. Holton as appellant, approached and inquired of the whereabouts of Mr. Frazier, a friend of Ms. Holton. Mr. Frazier not being available, the man wrote the name "Bill" and a phone number on a piece of paper, gave it to Ms. Holton, and requested that she have Mr. Frazier call him at that phone number. A matter of minutes thereafter, while inside her residence, Ms. Holton again encountered appellant standing in her apartment brandishing a pistol. Ms. Holton fled with appellant in pursuit, demanding that she surrender any items of pecuniary value in her possession. The arrival of other persons on the scene apparently frightened appellant for he began fleeing the premises. At the front of the premises he was confronted by decedent whom he shot to death and made good his escape.

During the course of the investigation, Ms. Holton gave the note to homicide detectives who, after making a photocopy of same, returned the original either to Ms. Holton or to someone on her behalf. Shortly thereafter, the homicide detective discovered that the copy had been misplaced. Upon contacting Ms. Holton to retrieve the original, he learned of its loss as well.

Appellant, by written pretrial motion with appropriate memorandum of points and authorities, sought production of the note. The government, while able to disclose to appellant the apparent verbatim content of same, was unable to produce either the original or the copy. When apprised of the loss of both the original and the copy, the trial court denied appellant's motion to produce. It is this ruling with respect to the document itself as opposed to its message content which appellant contends transgresses *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, as well as, by analogy, the Jencks Act, 18 U.S.C. § 3500 (1970), and cases construing that statute that constitutes appellant's first assignment of error.

Although present Super.Ct.Cr.R. 16(a)(1), (c) speaks in mandatory terms given certain conditions, the rule at the time of this motion did not. The applicable portion [Super.Ct.Cr.R. 16(b)] then read:

> (b) Upon motion of a defendant, the court may order the prosecutor to permit the defendant to inspect and copy or photograph . . . papers, documents, tangible objects . . . which are within the possession, custody or control of the government upon a showing of materiality to the preparation of his defense and that the request is reasonable.

If, under the rule as then applicable, the trial court knowingly exercised discretion to deny the motion to produce, our review would be limited to an "abuse of discretion" standard, *Xydas v. United States,* 144 U.S. App.D.C. 184, 445 F.2d 660 (1971). We must examine the trial court's ruling to determine whether it purports to be an exercise of discretion. The colloquy between the court and counsel was as follows:

DEFENSE COUNSEL . . . [Government has not produced the note]
. . .

ASSISTANT UNITED STATES ATTORNEY: . . . The note has been lost, for the court's information. The police lost them.

DEFENSE COUNSEL: We already have testimony that it was given to the police. . . .

\*  \*  \*  \*  \*  \*

DEFENSE COUNSEL: The . . . [discovery motion I refer to is the one] . . . in which I asked for the note since I hadn't been informed that it was lost, and out of an abundance of caution, and as I stated to the Court, the statement in *United States v. Scriber,* I felt that the motion had to be filed at this time.

THE COURT: And what is it that you wish that you do not have?

DEFENSE COUNSEL: The note given by the assailant to Margaret Holton, and then given by her to the Metropolitan Police Officer investigating the homicide at the time of the investigation.

THE COURT: Now didn't . . . [Assistant United States Attorney] . . . say that the note has been lost?

DEFENSE COUNSEL: Yes he did.

THE COURT: Is that what you stated for the record.

ASSISTANT UNITED STATES ATTORNEY: Yes, I really tried to find it.

THE COURT: Well, you were looking for it because you thought it would help your case and that's why?

ASSISTANT UNITED STATES ATTORNEY: Yes.

THE COURT: Well, how can I rule on it? . . . Other than to deny it? . . . It can't be complied with.

The Court and counsel then turned their attention to other matters not here relevant.

As noted, appellant places principal reliance in his assertion that loss of both the original and the copy of the notes constitutes reversible error on two lines of cases—the line beginning with *Brady v. Maryland, supra,* which includes *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972), and *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and a second line beginning with *United States v. Bryant,* 142 U.S. App.D.C. 132, 439 F.2d 642 (1971), and including *Marshall v. United States,* D.C. App., 340 A.2d 805 (1975).[1]

In *Brady, Moore,* and *Agurs,* a common factor existed. The evidence sought to be produced was extant at the time production was claimed to be due. It is this feature which takes this case out of the strict holding of each of these cases. Rather, the issue presented here is three-fold: (1) would the document in question if extant in the possession of the government at the time of demand have been subject to a valid motion to produce under Super.Ct.Cr.R. 16(b); (2) if so, did the government have a duty to preserve the document so as to be able to produce it upon motion, and (3) if there was a duty to preserve, was it breached in this case and, if so, what consequences flow therefrom.

Although, given their absence, we can not know what the result of handwriting analysis would have been, it is clear that these documents were discoverable material within the ambit of Super.Ct.Cr.R. 16(b). *Mar-*

---

1. It is important to recognize that this is *not* an issue of Jencks Act production. 18 U.S.C. § 3500. Appellant does not contend the note to be producible as a substantially verbatim statement under the Jencks Act. In this he is correct. Rather, he sought production under then Super.Ct.Cr.R. 16(b).

*shall v. United States, supra.* Thus, we must turn to the second question—was there a duty to preserve in order to be able to produce.

In *United States v. Augenblick,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), the Supreme Court suggested that the duty to produce entailed an antecedent duty to preserve.[2] In *United States v. Bryant, supra,* the court, placing strong reliance on *Augenblick,* held that a duty to disclose under 18 U.S.C. § 3500 entailed an antecedent duty to preserve. As noted, both *Augenblick* and *Bryant* involved Jencks situations. That this distinction from the present case is without dispositive significance is shown by our decision in *Marshall.*[3] There we recognized that court decisions and Metropolitan Police Department regulations require preservation of items which are subject to a motion to produce.[4]

While our decision in *Marshall* does not explicitly decide the question of sanctions under Rule 16, we proceeded in that case to analyze the question of sanctions by analogy to *Brady* and *Bryant.* A similar analysis is helpful here.

In the line of so-called *Brady* cases, we find three types of situations. The first involves knowing use by the government of perjured testimony. Where this occurs, the conviction violates due process if there is any reasonable likelihood that the false testimony could have affected the judgment. *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935); *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The second is typified by *Brady, supra,* where pretrial demand was made for specific evidence. Where this occurs, the test is whether the non-disclosed evidence was material, favorable to the accused, and might have affected the outcome

of the trial. The third is illustrated by *United States v. Agurs, supra,* where no demand was made. In such circumstances due process mandates a new trial only if the omitted evidence creates a reasonable doubt in the mind of the court which otherwise would not exist.

It bears repeating, in all these cases the evidence sought to be produced was extant at all relevant times, where here, it was not. The importance of this fact rests in the availability of the items for independent evaluation of evidentiary impact. Where the evidence is lost, it is difficult, if not impossible, to make such an independent evaluation. This case presents a classic example. The written content of the note was clearly established. However, the content is not what was at issue. Rather, it was the style of handwriting that was important. Given the loss of the documents, the style of handwriting could not be established. Thus, were we to hold that where the evidence is lost, a defendant is still required to meet the *Agurs* "outcome determinative" standards, we would be imposing a task often impossible to perform. For, as here, there will often be no method by which a defendant can establish the impact of the evidence, through no fault of his. Conversely, it would be absurd to structure a rule which would require the government to preserve every shred of evidence obtained during a criminal investigation no matter how minimal or tangential its relevance. *Cf. Moore v. Illinois, supra.* Thus, while it is proper to focus solely on the impact of the defendant's trial in cases of claimed constitutional error where there is extant non-disclosed evidence, *Agurs, supra,* 427 U.S. at 109–113, 96 S.Ct. 2392: where the evidence producible pursuant to a Rule 16 motion has been lost, a different test is appropriate. While we do not purport to

---

2. The item sought was a tape recording of a statement producible under 18 U.S.C. § 3500, the Jencks Act. The Supreme Court noted that neither its decision in *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1975) nor 18 U.S.C. § 3500 was cast in constitutional terms, although denial of production might in some circumstances violate the Sixth Amendment.

3. In *Marshall,* the item in question was a stolen purse. Its production was sought so that fingerprint analysis could be made in an attempt to identify the thief.

4. *Cf. United States v. Scriber,* 163 U.S.App. D.C. 36, 499 F.2d 1041 (1974).

fashion a precise test herein, any appropriate test must require an evaluation of (1) the circumstances occasioning the loss; (2) systematic steps taken toward preservation; and (3) the magnitude of demonstrated evidentiary materiality. In other words, any such test would require an evaluation and balancing of various factors. This is a function in the first instance for the trial court. Where the trial court has not considered such an issue properly raised before it, we would normally remand to the trial court for such consideration. However, given the undisputed evidence in this record, no remand is necessary. The record here is clear and undisputed that there was no intentional or bad faith loss. The loss of the copy apparently occurred inadvertently and immediately after it was made. With dispatch, the police sought to obtain the original without success. Further, whether any handwriting analysis would have been possible given its brevity and the outcome of such analysis if made, are matters subject only to speculation. In light of all the circumstances, we are satisfied that the trial court would have denied a request for sanctions for to have done otherwise would have been an abuse of discretion.[5]

A constitutional analysis does not lead to a different result for it is clear that no due process right of the appellant was violated in this case. *Cf. March v. United States,* D.C.App., 362 A.2d 691, 702–704 (Section IV) (1976).

 Appellant's next contention relates to the sufficiency of the evidence that he was the perpetrator of the offenses. We must view the evidence in its light most favorable to the government, and determine whether or not a reasonable mind could conclude guilt beyond a reasonable doubt from the evidence presented. *Crawford v. United States,* 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967); *Curley v. United States,* 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232 (1947). Here, there is an

eyewitness identification based on observations under favorable circumstances as to lighting, duration, and stimuli to observe keenly; coupled with three subsequent identifications by the eyewitness; all of which are positive and unwavering. In addition, the testimony of other witnesses including that of the defendant himself gave weighty corroboration to the identification of appellant as the culprit. This claim of error is without merit. *Cf. Marshall v. United States, supra; Williams v. United States,* D.C.App., 355 A.2d 784 (1976).

Affirmed.

---

5. These circumstances are in stark contrast to those in *Bryant* which the court described as follows:

It is important to recognize that this is not a case of good faith effort to preserve highly relevant evidence, frustrated only by inadvertent loss. Rather, it is a case of intentional nonpreservation by an investigating official. [142 U.S.App.D.C. at 137, 439 F.2d at 647.]