Adrian J. WIGGINS, Appellant,

v.

UNITED STATES, Appellee.

No. 11561.

District of Columbia Court of Appeals.

Argued Nov. 16, 1977.

Decided April 24, 1978.

Mady Gilson, Public Defender Service, Washington, D. C., for appellant. Silas J. Wasserstrom, Public Defender Service, Washington, D. C., also entered an appearance for appellant.

Steven D. Gordon, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Albert H. Turkus, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN, YEAGLEY and FERREN, Associate Judges.

YEAGLEY, Associate Judge:

Appellant was convicted by a jury on August 16, 1976, of one count of robbery, in violation of D.C.Code 1973, § 22–2901. On October 15, 1976, the court suspended imposition of sentence and placed appellant on three years' probation under 18 U.S.C. § 5010(a) (1970).

The case grew out of the following fact situation. On March 12, 1976, the complainant was accosted as he was returning to his car after leaving a branch of the National Bank of Washington at 7601 Georgia Avenue, N.W. The assailant attempted to take from the complainant a brown paper bag in which the latter had placed money received at the bank. After a struggle, the assailant grabbed the bag and ran away. Mr. Kenneth Dual observed this altercation. He followed appellant from the scene, saw him exchange clothing and give the paper bag to a woman waiting in a white Cadillac, and alerted police officers, who arrested appellant and returned him immediately to the bank. At the bank, complainant identified appellant, as did Mr. Dual and a teller.

At trial, appellant was again identified by both complainant and Mr. Dual, and by Mary Lumpkin, who lived near the bank and who testified that on the afternoon of March 12, she observed appellant running through an alley and across her backyard, carrying a paper bag.

Appellant's defense was mistaken identity. He also presented four witnesses who testified to his good reputation for peacefulness and veracity.

■ This appeal presents for resolution the question whether the trial court erred in refusing to grant appellant's requests that it order the government to produce a transcript of the grand jury testimony of three witnesses who allegedly gave testimony favorable to appellant, and who were not called by the government as witnesses at trial.[1] Appellant contends that this refusal violated his due process right to excul-

---

1. At a discovery conference held in May 1976, the government informed appellant's counsel that two individuals, Ernest Barnes and Harry Lumpkin, had stated to police at the time of appellant's arrest that appellant was not the assailant. After these individuals testified before the grand jury, the government provided appellant's counsel with their names and a

patory material recognized in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that the trial court abused its discretion in denying appellant's request for production of this testimony under then effective Super.Ct.Cr.R. 16(b).[2]

We turn first to appellant's *Brady* claim. In *Brady*, the Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196. In the instant case, three factors fatally undermine appellant's contention that the evidence which he requested was suppressed, as *Brady* envisions that term.

First, the government disclosed to the defense the identity of witnesses whose grand jury testimony might be favorable.[3] Such a procedure was held to satisfy *Brady* in *United States v. Ruggiero*, 472 F.2d 599, 603–05 (2d Cir.), *cert. denied*, 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973). There, the court said:

Here the appellant was on notice of the essential facts required to enable him to take advantage of such exculpatory testimony . . . . He was also well aware of the process by which they could be compelled to testify at trial. As long as they could be subpoenaed to testify, their grand jury testimony, if offered in their absence, would have been excluded as hearsay. If appellant wanted their testimony, the obvious and logical course was to subpoena them and put them on the witness stand. [*Id.* at 604–05.]

See also *United States v. Natale*, 526 F.2d 1160, 1170–71 (2d Cir. 1975), *cert. denied*, 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976).

A second factor cutting against our finding suppression is that the record contains the prosecutor's unchallenged statement to the trial court that he had read to defense counsel a substantially verbatim account of the grand jury testimony here in issue.

Third, with regard to the grand jury testimony of Mr. Barnes, we note that he appeared as a defense witness at trial, and that his trial testimony mirrored the account of the robbery which he gave to the grand jury.[4]

Under these circumstances, there was simply no suppression of evidence, and we

summary of their testimony. The government refused to provide transcripts of the grand jury testimony of these witnesses.

Appellant moved orally under then effective Super.Ct.Cr.R. 16(b) for a transcript of Mr. Barnes' testimony, and subsequently filed a written memorandum, broadening his request to include transcripts of the grand jury testimony of all witnesses whom the government did not intend to call at trial, which included Mr. Barnes, Mr. Lumpkin, and Mr. Calvin Jones.

2. Prior to amendment, and at the time of appellant's trial, Rule 16(b) provided:

Other Books, Papers, Documents, Tangible Objects or Places. Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies of portions thereof, which are within the possession, custody or control of the government, upon a showing of materiality to the preparation of his defense and that the request is reasonable.

3. We do not, of course, disagree with appellant's observation that grand jury testimony is

subject to the duty to disclose under *Brady*. *E. g.*, *United States v. Anderson*, 368 F.Supp. 1253, 1262–63 (D.Md.1973); *United States v. Leta*, 60 F.R.D. 127, 131 (M.D.Pa.1973); *United States v. Sink*, 56 F.R.D. 365, 367 (E.D.Pa. 1972). We find that under the circumstances here presented, this duty was met.

4. Mr. Barnes testified both before the grand jury and at trial that shortly after 5 p. m. on the day in question, as he was getting into his car behind his place of employment, he saw someone run through the alley with a paper bag in his hand, and disappear. According to Mr. Barnes, appellant appeared at about this time and was going north on 9th Street when police grabbed him. Mr. Barnes testified that the man under arrest was not the same man who had run past him with the paper bag.

We observe, parenthetically, that Mr. Barnes was the only grand jury witness here at issue whose testimony can truly be considered favorable to appellant and thus material to his defense within the meaning of *Brady*. *See Smith v. United States*, D.C.App., 363 A.2d 667, 668–69 (1976).

Mr. Howard Lumpkin testified that on the afternoon of March 12, his wife called him to

do not have before us the kind of unfairness to which *Brady* addressed itself. We hold that the trial court did not violate appellant's *Brady* rights by denying production of the grand jury transcripts.

■ This holding is not, however, dispositive of appellant's remaining contention that the trial court abused its discretion in denying his timely and repeated requests for production of the grand jury transcripts under Super.Ct.Cr.R. 16(b). Although this rule was amended subsequently, we must, of course, resolve appellant's contention in light of the rule applicable when the requests were made. (*See* note 2, *supra*.)

■ *Brady* mandates retrospective analysis; in the instant case we have, in hindsight, determined that appellant was not denied a fair trial in a manner which that case proscribes. Review of a contention under then effective Rule 16 is controlled by a different consideration. The rule purported to provide a criminal defendant with an opportunity to develop his case, and to require the trial court, in exercising its discretion, to make a prospective assessment of the potential value of the evidence requested by the defendant. The rule required that the defendant demonstrate the materiality of the requested evidence and that the request be reasonable, insofar as compliance would not unduly burden the government. With respect to the latter of the two requirements, there is no assertion on the record that the government could not have logistically complied with appellant's request.[5] With respect to the former, we cannot say, again with reference to the record, that the requested evidence was so patently lacking in materiality as to justify the trial court's denial of appellant's requests without an *in camera* investigation of the contents of the material sought.[6]

■ We hold that the trial court abused its discretion in not examining this material before ruling on appellant's requests. We do not hold that such inspection is necessary in all circumstances, but we emphasize that trial courts must be solicitous of discovery motions and careful not to deprive a defendant of a critical, statutorily provided defense tool.

Finally, however, review of the entire record convinces us that the trial court's error in this case was harmless, inasmuch as the judgment was not swayed substantially, if at all, by the error. *Kotteakos v. United*

---

the window of their home after she saw a man jump the fence backing on their property. Mr. Lumpkin went outdoors, saw a white Cadillac pulling away from the curb, but did not get a good look at the individual driving. Mr. Lumpkin later went to the bank and told police that the man they had picked up—appellant—could not be the man who had run through his yard, because that man had left the scene in the white Cadillac. Mr. Lumpkin told the grand jury, however, that he had first mistakenly assumed that appellant was in the car, and that a subsequent conversation with his wife convinced him that another person might have been driving the Cadillac, and that appellant could have been the man who ran through his yard. Indeed, Mr. Dual testified that the car was in fact driven by a woman, and that appellant did not enter the car at the time in question.

Mr. Calvin Jones also testified. He said he lived with appellant and appellant's mother, owned a white Cadillac with a white vinyl top, but asserted that appellant had never driven this vehicle. The testimony of Mr. Lumpkin and Mr. Jones cannot be realistically regarded as favorable to appellant, and may, in fact, be construed to cut the other way.

5. *Cf. e. g., United States v. Ross*, 511 F.2d 757 (5th Cir.), *cert. denied*, 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54 (1975) (general descriptions of material sought and conclusory assertions of materiality insufficient); *United States v. Jordan*, 399 F.2d 610, 615 (2d Cir.), *cert. denied*, 393 U.S. 1005, 89 S.Ct. 496, 21 L.Ed.2d 469 (1968) (request for *all* material which might be useful to defense unreasonable); *United States v. Crisona*, 271 F.Supp. 150, 158 (S.D.N.Y.1967) (request for *any* correspondence, memoranda, or other writing not reasonable); *United States v. Soyka*, 265 F.Supp. 126, 129 (S.D.N.Y.1967) (request for *all* government records, papers, and documents not reasonable); *United States v. Louis Carreau, Inc.*, 42 F.R.D. 408, 416 (S.D. N.Y.1967) (blanket request not reasonable).

6. *See United States v. Eley*, 335 F.Supp. 353 (N.D.Ga.1972); *United States v. Leichtfuss*, 331 F.Supp. 723 (N.D.Ill.1971).

*States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). The grand jury testimony of which appellant was prospectively and erroneously deprived was brought to appellant's attention subsequently and, in any event, would have done nothing to strengthen his defense against the instant charge.[7]

Appellant's conviction is

*Affirmed.*

FERREN, Associate Judge, with whom KERN, Associate Judge, joins, concurring:

In this case we hold that the exculpatory evidence requested by the defense was not "suppressed" within the meaning of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny; appellant received all the information he sought that was covered by the *Brady* principle. Thus, we do not reach the question whether there was reversible error under *Brady* for failure to produce "material" evidence.

We do, however, reach the "materiality" question under Super.Ct.Cr.R. 16(b) (as in effect at the time this case was tried), for a document commonly subject to discovery was unquestionably withheld.[1] That is to say, given the fact that appellant did not receive the requested grand jury transcript, we must consider whether the trial court committed reversible error for failure to order the government to produce "material" evidence within the meaning of Rule 16(b). The Rule 16 question, therefore, is the more complex one here.

Although we resolved the *Brady* issue short of selecting and applying the appropriate appellate review standard for materiality, we gained perspective for the Rule 16 analysis by comparing it with the proper treatment of (hypothetically) suppressed *"Brady"* evidence. Unless the court makes such a comparison when it considers a request for information under both *Brady* and Rule 16, the court may inadvertently—and inappropriately—apply a *Brady* gloss to the Rule 16 question (as, we shall see, the trial

---

7. *Cf. Levin v. Katzenbach,* 124 U.S.App.D.C. 158, 363 F.2d 287 (1966).

1. The government contends that the appellant's motion for discovery of grand jury testimony was not properly made under Super.Ct.Cr.R. 16(b) (as then in effect)—that the proper vehicle for such a motion was Rule 6. Because Rule 16 has since been amended to limit discovery requests to Rule 6 for all grand jury testimony except statements of a defendant, Super.Ct.Cr.R. 16(a)(3) (effective November 16, 1976)—and because the government prevails here on other grounds—there would be little, if any, profit in an extended discussion of the relationship between Rule 6 and old Rule 16. A brief look into the propriety of appellant's discovery request is called for, however, to demonstrate that a grand jury transcript was discoverable under Rule 16—that we can deal here with the Rule 16 "materiality" issue on its merits.

It is true that the courts usually have analyzed discovery of grand jury testimony from a Rule 6(e) perspective. *See, e. g., Young v. United States,* 132 U.S.App.D.C. 142, 143, 406 F.2d 960, 961 (1968); *United States v. Ahmad,* 53 F.R.D. 186, 192–93 (N.D.Pa.1971). Nevertheless, it should be noted that none of the explicit limits on discovery under old Rule 16(b) (applicable here) applies to grand jury transcripts; literally, Rule 16(b) would appear to be an appropriate discovery vehicle for them. *See United States v. Sink,* 56 F.R.D. 365, 367 n. 1 (E.D.Pa.1972). It is interesting to note, too, that a number of federal court decisions have not identified the rule under which analysis of the issue fell. *See e. g., United States v. Eisenberg,* 469 F.2d 156 (8th Cir. 1972), *cert. denied,* 410 U.S. 992, 93 S.Ct. 1515, 36 L.Ed.2d 190 (1973); *United States v. Daras,* 462 F.2d 1361 (9th Cir.), *cert. denied,* 409 U.S. 1046, 93 S.Ct. 545, 34 L.Ed.2d 497 (1972); *United States v. Tierney,* 424 F.2d 643 (9th Cir.), *cert. denied,* 400 U.S. 850, 91 S.Ct. 53, 27 L.Ed.2d 87 (1970); *United States v. Gollaher,* 419 F.2d 520 (9th Cir.), *cert. denied,* 396 U.S. 960, 90 S.Ct. 434, 24 L.Ed.2d 424 (1969).

Finally, the gloss of *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), and its progeny arguably would affect a court's ruling on the production of a grand jury transcript irrespective of the particular rule under which it was sought. Here, of course, the government, by supplying defense counsel with the names of grand jury witnesses and the substance of their testimony, could be said to have eliminated most of the protective concerns usually advanced to preserve grand jury secrecy. Thus, I am satisfied that the trial court, upon inspection, might well have found no basis under *Dennis* (and later cases) for ordering the transcript withheld.

court did here).[2]  Accordingly, I propose to sketch out a few observations about the appellate review standards under *Brady* and Criminal Rule 16, respectively, in order to assure that the Rule 16 issue is given its due, independent of the *Brady* principle.

### I.

In this case, as in *Brady* itself, there was a pretrial request for specific evidence. Had there been a "suppression," within the meaning of *Brady,* the question of affirmance or reversal would have turned on whether the suppression was "material" to the outcome.

A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome. [*United States v. Agurs,* 427 U.S. 97, 104, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342 (1976).][3]

Thus, the test is essentially a one-step inquiry, with the burden of proof on the appellant; there is no "harmless"-"reversible" error dichotomy under *Brady.*

Under former Super.Ct.Cr.R. 16(b), however, there is a two-step inquiry.[4]  Appellant initially has the burden of proving that the discovery request, denied by the trial court, was "material to the preparation of his defense and that the request [was] reasonable" (*i. e.,* not unduly burdensome on the government). *Id.* If appellant carries that burden and thus proves "error," the burden is then shifted to the government to demonstrate that the error was "harmless," commonly under the Supreme Court standard in *Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).[5]  Otherwise, the conviction must be reversed.

Under that [*Kotteakos*] standard when error is present in the record, the review-

---

**2.** In *United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976), the Supreme Court's most recent pronouncement on *Brady,* the Court stated: "We are not considering the scope of discovery authorized by the Federal Rules of Criminal Procedure, or the wisdom of amending those Rules to enlarge the defendant's discovery rights."

**3.** *Agurs* identified three different appellate review standards, depending on the circumstances. (1) In a case of the government's knowing use of perjured testimony, *see Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), the verdict must be set aside "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs, supra* 427 U.S. at 103, 96 S.Ct. at 2397. (2) The intermediate test cited above in the text, drawn from *Brady* itself, is for a case like the present one where there has been a specific defense request. (3) At the other extreme, represented by the facts in *Agurs, supra,* when there has been no defense request for the undisclosed evidence, or merely a general request for "all *Brady* material," reversal would result only upon a finding (with due deference to consideration by the trial judge) that the "omitted evidence creates a reasonable doubt [of culpability] that did not otherwise exist, . . . evaluated in the context of the entire record." *Agurs, supra* at 112, 96 S.Ct. at 2401. *See Brown v. United States,* D.C.App., 372 A.2d 557, 560 (1977).

**4.** The following analysis is generally applicable under Super.Ct.Cr.R. 16 as presently in effect, subject to the changes in what is, and is not, discoverable.

**5.** In *Rosser v. United States,* D.C.App., 381 A.2d 598, 609 n. 10 (1977), we noted that in some contexts the harmless error standard of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (harmless beyond a reasonable doubt), rather than the *Kotteakos* standard, has been applied under Criminal Rule 16—a question we did not have to resolve there. More recently, in *Lee v. United States,* D.C.App., 385 A.2d 159 at 162 we utilized the *Chapman* test in a Rule 16 disposition. By discussing the *Kotteakos* test here, I do not suggest a definitive resolution of the proper test under Rule 16 for these or other circumstances.

The Supreme Court has not spoken definitively as to Rule 16. It is interesting to note, however, that the Court has stressed a strict standard in the Jencks Act context: Since courts cannot "speculate whether [Jencks material] could have been utilized effectively at trial, *Clancy v. United States,* 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574 . . . (1961), the harmless-error doctrine must be strictly applied in Jencks Act cases. . . . *See Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 . . . (1946); *Gordon v. United States,* 344 U.S. 414, 422–23, 73 S.Ct. 369, 97 L.Ed. 447. [*Goldberg v. United States,* 425 U.S. 94, 111 n. 21, 96 S.Ct. 1338, 1348, 47 L.Ed.2d 603 (1976) (initial citations omitted).]

ing judge must set aside the verdict and judgment unless his "conviction is sure that the error did not influence the jury, or had but very slight affect." [*United States v. Agurs, supra* at 112, 96 S.Ct. at 2401.]

As a practical matter, when a combined *Brady*-Rule 16 request is made for the same evidence—and there unquestionably has been a "suppression"—any difference in appellate outcome under these two approaches is likely to depend on how heavy the appellant's burden is under Rule 16 to show materiality to defense preparation. The heavier the courts make it, the closer Rule 16 review approaches a one-step, *Brady*-type review—a result which, in some instances, is likely to encourage resistance to discovery requests and frustration of the very purpose of Rule 16.[6]

The present case is a classic illustration of why *Brady* and Rule 16 analyses must be kept separate. First, there was not a "suppression" within the meaning of *Brady* whereas the government withheld a document of a sort discoverable under Rule 16 (thereby invoking the court's "harmless"-"reversible" error analysis). *See* note 1, *supra.* Second, had there been a *Brady* "suppression" here, I find it rather easy to conclude that appellant has not carried *his* burden of proving the kind of "materiality" of the grand jury transcript that "might have affected the outcome." *United States v. Agurs, supra* at 104, 96 S.Ct. 2392. On the other hand, as elaborated below, because there was a *prima facie* showing of materiality to defense preparation (absent *in camera* inspection or other analysis by

the trial court leading to a contrary conclusion), I believe there was error under Rule 16. I find it more difficult to conclude that the government carried *its* burden to prove harmless error.

My point, more particularly, is this: skillful use of the grand jury transcript by defense counsel in preparation for the testimony of defense witness Barnes, for example, arguably could have influenced the jury verdict, given the fact that identification of the assailant based on conflicting testimony was the critical issue. The fact is, the government impeached defense witness Barnes by using prior inconsistent statements from the very grand jury transcript that the trial court, by its Rule 16 decision, permitted the government to withhold after a proper defense request. *Cf. Rosser v. United States,* D.C.App., 381 A.2d 598 (1977) (reversible error for prosecutor to withhold defendant's statement to the police and impeach him with it after he had taken the stand).

In summary, Criminal Rule 16 should not be confused with or compromised by *Brady* principles, including standards of review. The former is to be a significant tool for defense preparation; the latter is but a constitutionally minimum safeguard to preclude fundamental unfairness.[7]

## II.

With this background, I want to turn to the Rule 16 analysis of this case and underscore the importance of Judge Yeagley's comment that an appellate court must review the denial of a discovery motion by

---

6. As indicated in note 1, *supra,* when discovery of a grand jury transcript under old Rule 16(b) is at issue, the gloss of *Dennis v. United States, supra,* and subsequent cases adds another dimension to the materiality question.

On the other hand, as to other discoverable material, it should be noted that under new Criminal Rule 16 (effective November 16, 1976) the prosecutor, upon request, "[*shall*] permit the defendant to inspect and copy or photograph" specified documents "[which are] materiality to the preparation of his defense," Su-

per.Ct.Cr.R. 16(a)(1)(A), (C), (D) (emphasis added), subject to application for a court order to the contrary. Super.Ct.Cr.R. 16(d).

7. In the text I have emphasized how Rule 16 is more expansive than *Brady* principles. One should not overlook that in at least two respects *Brady* is more expansive than Rule 16: (1) error under *Brady* is available with respect to evidence not discoverable by the language of Rule 16, and (2) error under *Brady-Agurs* can be found absent a defense request.

looking as carefully as possible at the consequences of that denial to defendant *at the time of the trial court's ruling*.

Here, defendant-appellant sought a transcript of grand jury testimony as an aid to investigation—to preparation of his defense. The fact that the government told him the names of grand jury witnesses and summarized their testimony did not necessarily meet defendant's needs. If, for example, when defense counsel interviewed these witnesses, they had told their stories at variance with the prosecutor's report of their grand jury statements, counsel would not have been able to confront them during the interviews as effectively as counsel could have with a transcript in hand. Nor, more importantly, can we assume that the prosecutor summarized the grand jury statements with every detail that might have been relevant to defense counsel's preparation—as counsel viewed the case. This becomes obvious here in light of the government's impeachment of defense witness Barnes by use of the transcript.

The trial court denied the Rule 16 request, without inspecting the grand jury transcript, on the ground that the government had revealed the names of the grand jury witnesses and that this was all the rule required. "You have got the witness. You can produce the witness. You have got all the information that you need." The trial judge, therefore, essentially applied a *Brady* analysis to the Rule 16 request, concluding that no exculpatory evidence had been suppressed. He did not focus on the materiality that the *document itself* might have to trial preparation and strategy (for reasons such as those already indicated).[8]

Thus, given a *prima facie* showing of materiality, and absent a particularized ruling to the contrary (based on *in camera* inspection or otherwise), the trial court's denial of the Rule 16 request must be deemed error.[9]

We are then left to make a hindsight determination on the question whether the error was harmless. It is very difficult to do so without benefit of the trial court's contemporary review and comment. Hindsight, absent assistance from the trial court, is risky business; we have to be extremely careful that the results at trial do not blot out the view that must be taken of discovery rights, and the probable consequences of denial, at a critical *pretrial* juncture. Thus, the burden of evaluating harmless error is especially heavy here.

That burden is complicated, moreover, by the question whether we should review the grand jury transcript ourselves and decide the case now, or remand, as appellant requests, for a trial court determination as to whether timely production of the transcript might have affected the outcome. Appellant's counsel argues, more particularly:

> The trial court must be given initial responsibility for making this determination because it is that court which heard the evidence presented by the parties and had an opportunity to observe and assess the demeanor and credibility of the witnesses. Because of its first-hand familiarity with the case, the trial court is in the best position to determine in the first instance whether the interests of justice would be served by a retrial. Furthermore, if the necessity of a second trial becomes an issue, the matter can best be decided after a full adversary hearing at

8. This case is distinguishable from *United States v. Akers,* D.C.App., 374 A.2d 874 (1977), where the evidence sought—records of prior assaultive behavior by the police—was denied because it was inadmissible for use with the claims of self-defense, as well as for the proposed line of impeachment involving collateral issues. *But cf. Gordon v. United States,* 344 U.S. 414, 418, 73 S.Ct. 369, 372, 97 L.Ed. 447 ("Demands for production and offers in evidence raise related issues but independent

ones, and production may sometimes be required though inspection may show that the document could properly be excluded.").

9. I say "deemed" error as a way of hedging a bit because a grand jury transcript is involved. However, for the reasons stated in note 1, *supra,* I conclude that the trial court—had it dealt with the *Dennis* gloss—would not have found it a complicating factor.

which the parties have an opportunity to argue whether the production of the transcripts might have affected the outcome of the case.

*See Goldberg v. United States,* 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976) (remand to trial court to reconsider Jencks Act request which had been denied on the basis of erroneous ruling that lawyer's "work product" doctrine barred production of alleged "statements" by the witness).

The remand argument has obvious force, and I would recommend doing so but for one critical difference from *Goldberg, supra.* There, the determination as to whether, under all the circumstances, the lawyer's notes of conversations with the witness were Jencks Act "statements" required further factual inquiry—a collateral proceeding—which is a trial court function. Here, however, we have deemed the trial court's denial of the Rule 16 request to be error, given a *prima facie* showing of materiality to defense preparation, and absent a particularized trial court analysis to the contrary after an *in camera* inspection or otherwise. The only job remaining is a determination as to whether the error was harmless—a traditional appellate court function. If we can make that determination confidently, without further factual inquiry, then remand would be superfluous.

I am satisfied, after reviewing the trial record, the grand jury transcript, and appellant's proffer of lost defense options, that the trial court's denial of the Rule 16 request turned out to be harmless error. The only disadvantage suggested by appellant that is not overly speculative is the argument that Mr. Barnes' impeachment by the government's use of the transcript could have been avoided and his credibility enhanced. The fact is, however, that the impeachment was slight, and his in-court testimony confidently explained his two prior inconsistent statements before the grand jury.[10] We cannot overlook, moreover, that appellant was identified at trial by three eyewitnesses.[11] Accordingly, I have voted to affirm appellant's conviction.

I should add that if the discovery request had involved materials with a less-than-obvious relation either to defense preparation and trial strategy (the "error" question) or to outcome (the "harmless error" question). I would remand the case to the trial court by borrowing the *Goldberg* (Jencks Act) approach for Rule 16 purposes.[12]

---

**10.** Mr. Barnes had testified before the grand jury that he did not remember the color of the assailant's cap. At trial, he testified that it was a light cap. When confronted with the inconsistency, he replied, "After I thought about it, I remembered exactly the cap he did have on, the complexion of it."

Also before the grand jury, he had testified that both the assailant and a man chasing him had come out of the bank. At trial he testified that they both came out of an office building next to the bank. When asked, he explained, "From the beginning I figured that was the bank, but *after* I *went back up and looked at it,* it was the office building they both came out, back door of that building, down those steps and up that alley . . . .. I figured it was the bank, the back of the bank. But after I went down I found it was the office building."

**11.** This case is therefore distinguishable from *Rosser v. United States, supra,* a one-witness case against the defendant.

**12.** Although he had not reviewed the grand jury transcript, the trial judge certified it as

part of the record for appeal, at the government's request. Defense counsel, moreover, had received at least the part pertaining to defense witness Barnes after the government's cross-examination and before redirect. For these reasons, the document is before us and the parties have had an opportunity to brief and argue points concerning it.

If the transcript had not been part of the record, or if we had had doubts about evaluating its relevance (as indicated in the text above), we would have remanded the case. Appellant filed a motion asking us to remand without reviewing the grand jury transcript. As our analysis indicates, however, that would not have been a productive use of trial court resources—in this case. We denied the motion. This is not to say that we automatically will review supplementary materials of this sort in other cases where the trial court has not. That is normally not our function.